H. S. ANDERSON, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

Ethel H. ANDERSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Robert W. ANDERSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Gloria S. ANDERSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

John Hardy ANDERSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 12044–12048.

United States District Court
S. D. California, Central Division.

June 30, 1954.

Findings and Judgment March 18, 1955.

Mackay, McGregor, Reynolds & Bennion, by Adam Y. Bennion, Los Angeles, Cal., for plaintiffs.

Laughlin E. Waters, U. S. Atty., and Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, Los Angeles, Cal., for defendant.

JAMES M. CARTER, District Judge.

Memorandum to Counsel.

It appears to the Court that the basic question in this case is *what the plaintiffs bought.* The Government contends they bought the *interest* of H. S. Anderson, deceased, in the California and Alaska partnerships; that there has been since no sale or transfer of these *interests* they bought, and being thus a

capital investment, the amounts paid may not be deducted from their income tax returns. The Government also contends that if the plaintiffs bought such *interests* of H. S. Anderson, deceased, in the two partnerships, the amounts paid may not be allocated to specific items. It distinguishes the Nathan Blum case, 5 T.C. 702, where such allocation was made, as being a case where the sole surviving partner bought the interest of the deceased partner with the result that a sole proprietorship and not a partnership resulted.

Plaintiffs contend that they bought specific items: namely, the contracts which the prior partnerships were operating, and that since it was stipulated that such contracts had a life of two years and were completely depleted in 1942 and 1943, plaintiffs should be entitled to deduct what they paid from their incomes and thus recoup their payments in the two years, or at least in the year 1943.

The interest of H. S. Anderson, Sr., in the California partnership at the time of his death was 75% and his son, H. S. Anderson, Jr., owned a 25% interest. The deceased at his death owned a 40% interest in the Alaska partnership and his three sons, plaintiffs herein, owned the remaining interest in varying shares.

The parties have stipulated that the two partnerships are controlled by California law. The Uniform Partnership Act was adopted in 1929. At the time in question the sections were in the Civil Code (1941 Ed.), Sections 2418 to 2436. In 1949 the sections were carried over without change into the Corporation Code.

Applying California law to the situation at Anderson's death on December 27, 1941, we see the following:

(1) "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." Section 2420, Civil Code. The word "surplus" is well adjudicated, and means the excess of assets over liabilities.

(2) The death of a partner is cause for dissolution, Section 2425, Civil Code, but a partnership is not *terminated* by dissolution, Section 2424, Civil Code. On his death, the interest of a deceased partner vests in the surviving partner or partners (unless he was the last surviving partner, and then his interest vests in his legal representative), Section 2419, Civil Code.

(3) The surviving partner carries on the partnership for the purpose of winding up the affairs and thus eventually achieving termination, Civil Code, Section 2431.

This is exactly what happened in this case. From December 27, 1941, to December 11, 1942, the partnership continued and a Court order was made in the estate proceeding authorizing the business to continue.

On December 11, 1942, agreements were entered into by which the *interests* of H. S. Anderson, deceased, in the two partnerships were purchased from his estate; $75,000 was paid for his *interest* in the California partnership and $50,000 for his *interest* in the Alaska partnership.

(4) This was strictly in compliance with Section 2436, Civil Code. The legal representative was entitled at his option to interest on this amount or the share of profits earned while the partnership continued after death. He chose profits, and the sum of $228,369.32 was paid into the estate representing this share. This was in accordance with Section 2436, Civil Code.

We pause to note that the agreement of December 11, 1942, and the probate orders show on their face that *what was purchased* was the interest of the deceased in the partnership. However, tax laws proceed on principles similar to equity in order to determine the reality of situations. So we inquire further.

On its face the agreement by H. S. Anderson, Jr., to purchase the interest of his deceased father in the California partnership appears similar to the Nathan Blum situation, since the purchaser was the sole remaining partner. But the plaintiff proved that all the transactions were part of one plan and that the plaintiffs and their wives had agreed to form the new partnerships and that H. S. Anderson, Jr., acted for himself, his brothers and their wives (the remaining plaintiffs) in purchasing the interest of his father. Similar was the situation concerning the Alaska partnership, when the sons of the deceased purchased but acted for their wives also pursuant to agreement, Tr. 111–112. Also proof of the financing entered into, in obtaining the money for the purchases, shows the plan and intent.

These facts take the purchase by H. S. Anderson, Jr., of the 75% interest out of the Blum case situation. We do not pass on whether or not we agree with its holding.

■ Now to a determination of the cases. We think:

(1) That plaintiffs have failed in their burden of proof to show purchase of particular assets.

No proof whatever was offered on the value of the contracts assets at the time of the death of deceased or on December 11, 1942, or what was the value of other assets if the contracts had a value. The written agreements speak of buying an *interest* in the partnerships. Though plaintiffs (one or more) were members of the prior partnerships, the contracts were never set up on the books as capital assets. The adjusted balance sheet shows the deceased's *interest* in the California partnership to be in excess of $71,000 without the alleged contracts being listed as capital assets.

It may well be true that the prospects of profits from the contracts impelled the purchase. However, not the contracts, but the *interest* of the deceased in the partnership was purchased, i. e., his right to his share of the *surplus* of assets over liabilities, Civil Code, § 2420.

The court cannot characterize the situation as one involving good will. If good will was purchased, it cannot be amortized. The record shows that good will was not purchased, Tr. 58, 148, un-

less it was the small difference between $75,000 and the $71,000 value of the deceased's interest in the partnership according to the revised balance sheet.

There was no dispute that the new partnerships were cancelled at the end of 1943. But there was no evidence of what was distributed on their dissolution or of any sale of the partnership or of the value as of that date of the whole of each partnership or of any particular percent in either one. The Court cannot say what the value of the 75% and the 40% interests in the two partnerships were as of December 31, 1943. This would have been susceptible of proof. But plaintiffs those not to consider that they had purchased an interest in each partnership which was a capital asset.

But plaintiffs argue that the interest cannot be followed since the old partnerships ended on December 11, 1942. But there is no reason why the base thus established could not be carried through as in all tax accounting. The new partnerships carried on the business of the old. The percentages held by the former partner's sons were retained and the interest of the deceased father was divided among the sons and the daughters-in-law who supplied the consideration to buy the interest of the deceased father. Thus the *identity* of the interest purchased was preserved and can be followed.

Thus we have:

| | Old Calif. Partnership | New Partnership |
|---|---|---|
| H. S. Anderson, Sr. | 75% | — |
| H. S. Anderson, Jr. | 25% | 42.5% |
| Ethel Anderson (his wife) | — | 7.5 |
| Robert Anderson | — | 21.5 |
| Gloria Anderson (his wife) | — | 3.75 |
| John Anderson | — | 25.00 |
| | 100% | 100% |

Thus there is no dispute that the 75% interest of the deceased father was split

three ways to each of the sons and their wives. The proof shows this was the way the matter was handled and the consideration paid.

In the Alaska partnership the situation was as follows:

| | Old Alaska Partnership | New Partnership |
|---|---|---|
| H. S. Anderson, Sr. (deceased) | 40% | — |
| Robert Anderson | 30% | 30% |
| Gloria Anderson (his wife) | — | $3\frac{1}{3}$ |
| John Anderson | 20 | $33\frac{1}{3}$ |
| H. S. Anderson, Jr. | 10 | 25 |
| Ethel Hamilton | — | $8\frac{1}{3}$ |
| | 100% | 100% |

Thus each surviving old partner retained the percentage he had, and the 40% purchased from the estate of the deceased father was split among the sons and their wives, and consideration paid therefor, as follows:

| | |
|---|---|
| H. S. Anderson, Jr. | 15% |
| Ethel (his wife) | $8\frac{1}{3}$% |
| Robert Anderson | — |
| Gloria (his wife) | $3\frac{1}{3}$% |
| John Anderson (no wife) | $13\frac{1}{3}$% |
| | 40% |

Thus the identity of the 75% and the 40% interest in the old partnerships were carried over into the new, and carried the same percentage in the new partnerships. The purchase price was a capital investment and became the base for each interest in the new partnerships.

(2) The Court finds that *interests* in the partnership were purchased and not specific assets, on the same reasoning as above, and believes the cases are controlled by Stilgenbaur v. United States, 9 Cir., 1940, 115 F.2d 283; Commissioner of Internal Revenue v. Shapiro, 6 Cir., 1942, 125 F.2d 532, 144 A.L.R. 349;

and Thornley v. Commissioner, 3 Cir., 1945, 147 F.2d 416.

There was no reason why the plaintiffs could not have purchased the specific contracts if they so desired. The surviving partner or partners as part of dissolution, looking to termination, could have purchased specifically *the contracts* and capitalized them in the new partnerships. The Court knows of no reason why the surviving partner, during dissolution, may not sell for a fair price partnership assets and reduce them to cash. The remaining interest of the deceased after the conversion of specific assets to cash could have also been purchased.

Why was this not done? If the contracts were worth $100,000 in the California partnership (plaintiffs contend the deceased's 75% interest was worth $75,-000), then the new partnership or the sons acting for the new partnership would have had to pay into the old partnership $100,000. The old partnership would then have held the cash instead of the contracts. To then purchase the interest of the deceased in the California partnership, the buyer would certainly have had to pay more than $75,000. It is obvious the partnership had other assets; and witness the $71,000 value of the deceased's interest on the books, without the contracts being set up as assets. The realities are that the widow and the probate court would have insisted on closer to $150,000 for the value of the *interest* in the partnership had the conversion of the contracts to cash taken place.

The result of such conversion would have been to clearly capitalize the contracts in the old partnership, something that had never been done.

True, the three sons involved here, who each took ⅙ of the separate property of their father, would have recovered from the estate approximately ½ (3 x ⅙) of the additional amount paid for the partnership interests. The widow and the fourth son (the minor) would have recovered from the estate ½ the additional amount received for the partnership *interests in such method of handling.*

Plaintiffs have been represented here and in their dealings with the estate by able counsel. We conclude the actions of plaintiffs were taken advisedly and the alternatives above rejected.

At first blush, the equities of the case seemed heavily in favor of plaintiffs, but the deceased partner and his partner sons, before his death, never treated the contracts as capital items. Now, through the incident of death, the plaintiffs claim the right to recoup what they paid for their father's interest in the partnerships.

Certainly the acts of the deceased and the plaintiffs, as partners in the old partnerships, throw light on their intent and on the realities of the situation.

Findings Of Fact And Conclusions
Of Law, No. 12044 Civil *

The above case came on regularly for trial on January 28 and 29, 1954, before the Hon. James M. Carter, United States District Judge, sitting without a jury, was consolidated for trial with the cases of Ethel H. Anderson v. United States of America, No. 12045–C; Robert W. Anderson v. United States of America, No. 12046–C; Gloria S. Anderson v. United States of America, No. 12047–C; and John Hardy Anderson v. United States of America, No. 12048–C; and evidence both oral and documentary having been received and the matter having been submitted on the evidence, written memoranda and oral argument, and the Court having duly considered the same and on June 30, 1954, having filed its Memorandum of Decision and Order to Prepare Findings of Fact, Conclusions of Law and Judgment, the Court now finds as follows:

Findings of Fact

I

The plaintiff is an individual residing in Los Angeles, California, within the

---

\* The findings in all cases, No. 12044 to 12048, are identical, except as to amounts.

Southern Judicial District of California, Central Division.

## II

The defendant is a corporation sovereign and body politic. The taxes and interest for the recovery of which this action is brought were paid to and collected by Harry C. Westover, who was, at the time of such payment and collection, the duly appointed, qualified and acting Collector of Internal Revenue in and for the Sixth Collection District of the State of California. Said Harry C. Westover was not in office as said Collector of Internal Revenue at the time this action was commenced.

## III

The plaintiff paid a deficiency of income tax for the year 1943 in the sum of $18,131.61 and interest thereon in the sum of $3,103.24, to the aforesaid former Collector of Internal Revenue, Harry C. Westover, in the amounts and on the dates as follows: $5,000.00 on February 26, 1947; $15,332.59 on March 19, 1947; $902.32 on March 25, 1947 and $0.06 by transfer to a January account.

## IV

Plaintiff filed with the Collector of Internal Revenue on December 28, 1948, a claim for refund of the deficiency paid by plaintiff in the amount set forth in the immediately preceding paragraph; the claim for refund was based on several alleged alternative grounds, which were that either the plaintiff or a partnership or partnerships of which plaintiff was a member made payments to the estate of H. S. Anderson, Sr., which payments were allowable as deductions for expenses under I.R.C. §§ 23(a) (1) or 23(a) (2), 26 U.S.C.A., from income tax for the year 1943; or that they were deductible by a limited partnership, and the partners thereof including plaintiff, in 1944, when the limited partnerships were terminated and dissolved; or that they were payments which were to be capitalized and then amortized and depreciated over the useful life of the property acquired thereby, to wit, certain contracts; or

that a loss deduction was incurred in the year 1943 when the value of the contracts were exhausted; or that a loss was similarly suffered in 1944 which would, as a net operating loss, be carried back to prior years and then deducted. On August 29, 1949, the Commissioner of Internal Revenue rejected in full plaintiff's claim for refund.

## V

On or before March 15, 1945, the plaintiff paid income taxes for the year 1944 in the sum of $3,920.20 to the aforesaid former Collector of Internal Revenue, Harry C. Westover. On March 15, 1948, the plaintiff filed with said Collector of Internal Revenue a claim for refund of the total income tax paid by plaintiff for the calendar year 1944 upon the alleged grounds that if the payments made to the Estate of H. S. Anderson, Sr., during the years 1942 and 1943 were not properly deductible for those years, they were deductible by the limited partnerships and the partners thereof in 1944, when said limited partnerships were terminated and dissolved, and that not only would refunds of the entire amounts of 1944 taxes be proper, but that each partner would be entitled to a carry-back loss, which would entitle him or her, in addition, to a refund of a portion of the deficiency paid for the year 1943.

## VI

This action was commenced on August 4, 1950, within the time required by law and arises under the Internal Revenue laws of the United States.

## VII

Harold S. Anderson, Sr., died intestate on December 27, 1941. Prior to and on the date of his death he was a member of a co-partnership (hereinafter referred to as the California partnership) consisting of himself and his son, H. S. Anderson, Jr., in which Harold S. Anderson, Sr., the decedent, owned a 75% interest and H. S. Anderson, Jr., owned a 25% interest. The business of said co-partnership consisted of subsistence contracting work (feeding and housing defense

workers) and was conducted in the States of California and Nevada under the name of "H. S. Anderson". The California partnership was organized on January 1, 1938, by virtue of an oral agreement between the decedent and H. S. Anderson, Jr. Said oral agreement contained no provision for continuance of the partnership in the event of death of one of the partners.

### VIII

Prior to and on the date of his death said Harold S. Anderson, Sr., the decedent, was a member of another co-partnership (hereinafter referred to as the Alaska partnership), consisting of himself and the Anderson sons, in which Harold S. Anderson, Sr., owned a 40% interest, Robert W. Anderson owned a 30% interest, John Hardy Anderson owned a 20% interest, and H. S. Anderson, Jr., owned a 10% interest. This co-partnership was engaged in similar activities within the territory of Alaska under the name of "Anderson Brothers Supply Company of Alaska". The Alaska partnership was created August 31, 1940, by the execution of a written partnership agreement.

### IX

On December 11, 1942, an agreement was made and entered into between Orien H. Anderson, widow of H. S. Anderson, H. S. Anderson, Jr., as administrator of the estate of H. S. Anderson, Deceased, H. S. Anderson, Jr., individually, Robert W. Anderson, and John Hardy Anderson, sons by a former marriage, and Orien H. Anderson, as guardian of the person and estate of William Todd Anderson, a minor, whereby the said parties made certain declarations and admissions for the purpose of settling certain controversies and differences between them relative to the extent and character of the estate of H. S. Anderson, deceased. As recited in said written agreement, for a valuable consideration received by each of the parties thereto and in further consideration of the promises and agreements by each of the parties thereto to be performed, among other things it was agreed as follows:

"2. Prior to and at the time of the death of H. S. Anderson, deceased, on December 27, 1941, he was a member of a co-partnership consisting of himself and his son, H. S. Anderson, Jr., in which H. S. Anderson, deceased, owned a 75% interest, and H. S. Anderson, Jr., a 25% interest of said co-partnership. The business of said co-partnership consisted of all of the enterprises then carried on and now being carried on in the States of California and Nevada. Prior to and at the time of the death of H. S. Anderson, deceased, the business of said co-partnership was conducted under the name of 'H. S. Anderson'; and subsequent to the death of H. S. Anderson, deceased, said business has been conducted in part under the name of 'Anderson Bros. Supply Co. of Nevada'. The said co-partnership will herein be referred to as 'The California Partnership'.

"3. Prior to and at the time of the death of H. S. Anderson, deceased, he was a member of a co-partnership consisting of himself and Anderson's Sons, in which H. S. Anderson, deceased, owned a 40% interest, Robert W. Anderson owned a 30% interest, John Hardy Anderson owned a 20% interest, and H. S. Anderson, Jr., owned a 10% interest. The business of the said co-partnership consisted of all of the enterprises then carried on and now being carried on in the Territory of Alaska. The business of said co-partnership has been and now is being carried on under the name of Anderson Bros. Supply Co. of Alaska. The said co-partnership will hereinafter be referred to as the Alaska Partnership.

\*    \*    \*    \*    \*    \*

"5. The parties hereto have investigated and it is agreed that the interest of H. S. Anderson, deceased, at the time of his death, in the foregoing partnerships and his other property was as follows:

"(a) In the California Partnership, a 75% interest, which interest was the separate property of H. S. Anderson, deceased;

"(b) In the Alaska Partnership, a 40% interest thereof, which interest was the community property of H. S. Anderson, deceased, and Mrs. Anderson;

\* \* \* \* \* \*

"6. H. S. Anderson, Jr., as surviving partner of the California Partnership, in full satisfaction and discharge of all claims of the estate of H. S. Anderson, deceased, and of the heirs of H. S. Anderson, deceased, for and on account of the interest of said H. S. Anderson in his lifetime and that his estate has acquired since his death in and to the California Partnership, hereby agrees to pay into the estate of H. S. Anderson, deceased, the following sums of money:

"(a) The sum of $75,000.00, representing, as the parties hereto agree, the fair market value at date of the death of the decedent, of his interest in said California partnership;

\* \* \* \* \* \*

"8. H. S. Anderson, Jr., Robert W. Anderson, and John Hardy Anderson, as surviving partners of The Alaska Partnership, in full satisfaction and discharge of all claims of the estate of H. S. Anderson, deceased, and of the heirs of H. S. Anderson, deceased, for and on account of the interest of H. S. Anderson in his lifetime and that his estate has acquired since his death in and to The Alaska Partnership, hereby agree to pay into the estate of H. S. Anderson, deceased, the following sums of money:

"(a) The sum of $50,000.00, representing, as the parties hereto agree, the fair market value at date of death of the decedent of his interest in said Alaska Partnership;

"(b) The sum of $38,000.00, representing, as the parties hereto agree, the estate's share of the profits of The Alaska Partnership from the date of the death of the decedent, December 27, 1941, to the date of this agreement.

\* \* \* \* \* \*

"17. All the parties hereto agree that the real property and the improvements thereon, said real property being described as follows:

"Lots 65 and 66, in the Industrial Center Tract, in the County of Los Angeles, State of California, as per map recorded in Book 12, page 101, of Maps, in the office of the County Recorder of said County,

and also the shares of stock of Douglas Oil & Refining Corporation, although in the record name of H. S. Anderson, are in reality the property of The California Partnership, and all parties hereto will join in such proceedings as may be proper, convenient or necessary to effectuate quieting title to that effect.

\* \* \* \* \* \*

"22. In addition to the property set forth in paragraph 17 hereof, there is also a certain oil lease in Ventura County and certain Puett Starting Gate Company stock which is in the name of H. S. Anderson, deceased, but which is the property of the California copartnership and which is to be handled as provided for in said paragraph 17."

X

Said agreement of December 11, 1942, between Orien H. Anderson in her personal capacity and in her capacity as guardian for her son, William Todd Anderson, a minor, H. S. Anderson, Jr., as administrator of the estate of H. S. Anderson, deceased, and individually, Robert W. Anderson and John Hardy Anderson was approved by the Superior Court of the State of California in and for the County of Los Angeles, sitting as a court of probate, on December 22, 1942, by or-

der of Court which further found as follows:

"That H. S. Anderson, deceased, owned a 75% interest in a California partnership known as H. S. Anderson, also known as H. S. Anderson, Co., which interest was separate property.

"That H. S. Anderson, deceased, owned a 40% interest in a partnership known as Anderson Bros. Supply Co. of Alaska, which interest was community property. * * *

"That the value of the estate's interest in the California partnership as of the date of death was $75,000.00.

"That the value of the estate's interest in the Alaska partnership as of the date of death was $50,000.00. * * *

"That H. S. Anderson, Jr., as the surviving partner of the California partnership, in full satisfaction and discharge of all claims of the Estate of H. S. Anderson, deceased, and of the heirs of H. S. Anderson, deceased, for and on account of the interest of said H. S. Anderson in his lifetime and that his estate has acquired since his death in and to the California partnership, shall pay into the Estate of H. S. Anderson, deceased, the following sums of money:

"(a) The sum of $75,000.00, representing the fair market value at date of the death of the decedent of his interest in said California partnership. * * *

"That said H. S. Anderson, Jr., Robert W. Anderson, and John Hardy Anderson, as surviving partners of the Alaska partnership, in full satisfaction and discharge of all claims of the Estate of H. S. Anderson, deceased, and of the heirs of H. S. Anderson, deceased, for and on account of the interest of H. S. Anderson in his lifetime and that his estate has acquired since his death in and to the Alaska partnership, shall pay into the estate of H. S. Anderson, deceased, the following sums of money:

"(a) The sum of $50,000.00, representing the fair market value at date of death of the decedent of his interest in said Alaska partnership. * * * "

## XI

On December 27, 1941, the only activities of the Alaska partnership consisted of subsistence contract work in connection with the construction of the air base at Anchorage, Alaska, pursuant to a contract dated July 24, 1940.

## XII

On December 27, 1941, the California partnership was engaged in the following subsistence work and/or had the following purchase orders or contracts for subsistence work:

(a) The operation of the post exchange fountain-grills at Camp San Luis Obispo, California, pursuant to an oral agreement entered into in or about March, 1941, later reduced to writing dated December 9, 1941.

(b) The operation of the post exchange fountain-grills at Camp Roberts, California, pursuant to a contract dated June 5, 1941. Said contract was cancelled by the Camp Roberts Post Exchange on February 1, 1943, due to change in military personnel and policy at this particular camp.

(c) The operation of the in-plant feeding facilities at the California Shipbuilding Yards, Terminal Island, California, pursuant to a contract dated September 2, 1941. Said contract was cancelled by California Shipbuilding Corporation on July 27, 1942.

(d) The operation of the in-plant feeding facilities at the Douglas Aircraft Plant in Long Beach, California, pursuant to an oral agreement entered into on or about July 1, 1941, which agreement was cancelled by Douglas Aircraft Company on November 19, 1942.

(e) The California partnership, prior to the death of the decedent, and the sur-

viving partner thereafter, received the following purchase orders from the Defense Plant Corporation, acting by and through Basic Magnesium, Inc., for the carrying on of subsistence work during the construction of the Basic Magnesium Plant near Las Vegas, Nevada:

| Purchase Order Number | Date |
| --- | --- |
| 211 | December 8, 1941 |
| Change Order No. 1 | December 15, 1941 |
| Change Order No. 2 | April 17, 1942 |
| 212 | December 15, 1941 |
| 213 | December 16, 1941 |
| Change Order No. 1 | April 14, 1942 |
| 214 | December 15, 1941 |
| Change Order No. 1 | April 15, 1942 |
| Change Order No. 2 | May 18, 1942 |
| 1933 | March 2, 1942 |
| Change Order No. 1 | May 2, 1942 |
| Change Order No. 2 | May 19, 1942 |
| 3836 | April 21, 1942 |
| 6167 | October 23, 1942 |
| Change Order No. 1 | September 2, 1944 |

(f) Said purchase orders and change orders were superseded by an agreement dated July 1, 1943 and by a settlement and release executed as of July 1, 1943.

(g) A reasonable estimate of the useful economic life of the respective contracts and purchase orders referred to in paragraph XI and paragraph XII(e) above, as determined by an Internal Revenue Agent for the purpose of computing depreciation of physical equipment, was two years from and after December 31, 1941.

### XIII

The partnership return of the new limited partnership returns "H. S. Anderson Čo." for the years 1942 and 1943 showed as deductions the sums of $58,-082.52 and $77,483.28 respectively, each of which figures included the sum of $37,-500 representing one-half of the $75,000 required to be paid under the agreement dated December 11, 1942, between Orien H. Anderson, H. S. Anderson, Jr., administrator, H. S. Anderson, Jr., Robert W. Anderson, John Hardy Anderson, and Orien H. Anderson as guardian of William Todd Anderson.

### XIV

At the time of the death of H. S. Anderson, Sr., he had an interest in the California partnership of 75% and his son, H. S. Anderson, Jr., owned a 25% interest. At the time of his death the decedent owned a 40% interest in the Alaska partnership and his three sons owned the remaining interest in varying shares.

### XV

The plaintiff has failed to show by preponderance of evidence that H. S. Anderson, Jr., purchased particular assets of the California partnership, the H. S. Anderson Co., from the estate of H. S. Anderson, deceased, and has failed to show that H. S. Anderson, Jr., Robert W. Anderson and John Hardy Anderson, purchased particular assets of the Alaska partnership from the estate of his father.

### XVI

Whatever contracts were in existence at the time of death of the deceased had no value. The contracts were never set up on the books of the partnerships as capital assets and never carried any value on the books.

### XVII

At the time of decedent's death, the balance sheet of the California partnership as properly adjusted indicates that the decedent had an interest in the California partnership in excess of $71,000, without the alleged contracts being listed as assets.

### XVIII

The $75,000 paid by H. S. Anderson, Jr., for his father's interest in the California partnership was for the payment of an interest; and the difference between $71,000 adjusted book value of that interest and the $75,000 paid was his right to his share of the excess of assets over liabilities, and the $4,000 difference, if anything, was goodwill or going concern value.

### XIX

On December 23, 1942, a limited partnership for the operation of the Anderson Bros. Supply Co. of Alaska was entered into between H. S. Anderson, Jr., Robert W. Anderson, John Hardy Anderson, Ethel Hamilton Anderson, the wife of H. S. Anderson, Jr., and Gloria S. Anderson, the wife of Robert Anderson. The new limited partnership was terminated and dissolved on December 31, 1943, by mutual consent and agreement. There is no evidence in the record of what was distributed on the dissolution. There is no evidence in the record of any sale of the partnership. There is no evidence in the record of the value of the partnership as of the date of dissolution and termination of the whole of the partnership or of any particular partner's percentage of interest in either partnership.

### XX

There was formed on December 23, 1942, by and between H. S. Anderson, Jr., Robert W. Anderson, John Hardy Anderson and Ethel Hamilton Anderson, the wife of H. S. Anderson, Jr., and Gloria S. Anderson, the wife of Robert Anderson, a limited partnership known as the H. S. Anderson Company to carry on the business theretofore known as the H. S. Anderson Co. and the Anderson Bros. Supply Co. of Nevada. Said limited partnership was terminated and dissolved as of the close of business on December 31, 1943, by mutual consent and agreement. There is no evidence in the record of what was distributed on the dissolution of the partnership. There is no evidence in the record of any sale of the partnership. There is no evidence in the record of the value of the partnership as of the date of the dissolution and termination of the whole of the partnership or of any particular partner's percentage of interest in either partnership.

### XXI

The new partnerships, to wit, the limited partnerships of H. S. Anderson Co., and the Anderson Bros. Supply Co. of Alaska, carried on the business of the old partnerships. The percentages held by the former partner's sons were retained and the interest of the deceased father was divided among the sons and the daughters-in-law who supplied the consideration to buy the interest of the deceased father. Thus, the identity of the interest purchased was preserved and can be followed.

Thus we have:

| | Old Calif. Partnership | New Partnership |
|---|---|---|
| H. S. Anderson, Sr. | 75% | — |
| H. S. Anderson, Jr. | 25% | 42.5% |
| Ethel Anderson (his wife) | — | 7.5 |
| Robert Anderson | — | 21.5 |
| Gloria Anderson (his wife) | — | 3.75 |
| John Anderson | — | 25.00 |
| | 100.00% | 100.00% |

The 75% interest of the deceased father was split three ways to each of the sons and their wives. This is the way the matter was handled and consideration paid.

### XXII

Identity of the interest purchased was preserved as well in the Alaska partnership and can be followed.

Thus we have:

| | Old Alaska Partnership | New Partnership |
|---|---|---|
| H. S. Anderson, Sr. (Deceased) | 40% | — |
| Robert Anderson | 30% | 30% |
| Gloria Anderson (his wife) | — | 3⅓ |
| John Anderson | 20% | 33⅓ |
| H. S. Anderson, Jr. | 10% | 25 |
| Ethel Hamilton | — | 8⅓ |
| | 100.00% | 100.00% |

Thus each surviving old partner retained the percentage he had, and the 40% purchased from the estate of the deceased father was split among the sons and their wives, and consideration paid therefor, as follows:

| | |
|---|---|
| H. S. Anderson, Jr. | 15% |
| Ethel (his wife) | 8⅓% |
| Robert Anderson | — |
| Gloria (his wife) | 3⅓% |
| John Anderson (no wife) | 13⅓% |
| | 40% |

### XXIII

The identities of the 75% and 40% interest in the old partnerships were carried over into the new, and carried the same percentage in the new partnerships. The purchase price was a capital investment and became the base for each interest in the new partnerships.

### XXIV

Interests in the respective partnerships were purchased and not specific assets. The sons and their wives could have purchased the specific contracts if they desired but did not do so. Had they done so, they could not have purchased the interest of the decedent in the California partnership for $75,000 and interest in the Alaska partnership for $40,000 as the partnerships had other assets and had the value that the plaintiffs now contend been placed upon them, they would have had to pay closer to $150,000 for the interest of the decedent in the California partnership alone.

### XXV

The three brothers, H. S. Jr., Robert and John, could have purchased the contracts for cash and thus capitalized the contracts in the partnership, but that was not done. Had such a course been taken, the three sons involved here, who each took ⅙ of the separate property of the father, would have recovered from the estate approximately ½ (three times ⅙), of the additional amount paid for the partnership interest. The widow and fourth son (the minor) would have recovered from the estate one-half the additional amount received for the partnership interest in such method of handling. The three brothers have been represented and were represented in their dealings with the estate by able counsel and the actions of the plaintiffs and the brothers and sisters-in-law were taken advisedly and the alternatives above rejected.

### XXVI

Before and up to the date of his death, the decedent and his partner sons never treated the contracts as capital items. The acts of the deceased on the plaintiffs as partners in the old partnerships have a bearing on their intent and the realities of the situation.

### XXVII

The plaintiff has failed to establish that the California partnership had an asset of substantial value at the date of H. S. Anderson, Senior's death in what later consisted of a subsistence business at the Basic Magnesium plant at Roysen, Nevada. On the contrary, the evidence indicates that very little beyond preliminary negotiations for the carrying on of a subsistence business had been consummated at the time of his death, that all the parties to the matter reconsidered it after the death, and only after being assured by H. S. Anderson, Jr., and his father-in-law, that H. S. Anderson, Jr., and his brothers were willing, and able, in their own right to carry it on, were further purchase orders given to H. S. Anderson. The method of arranging for the subsistence business to be carried on was by purchase orders executed by the contractor alone and not until July 1, 1943, was a binding bilateral contract between H. S. Anderson Co. and the contractor entered into, which was a year and a half after the death of H. S. Anderson and long after the purchase of the interest of H. S. Anderson, deceased, from his estate and the formation of a new limited partnership between the sons and sisters-in-law of the sons and wives of the Anderson sons. The contracts

have no value, were not purchased and could not be deducted as expenses paid for the production or collection of income, or the management, conservation or maintenance of property held for the production of income, or could not be capitalized and amortized or depreciated or allowed as a loss in either 1943 or 1944.

And from these facts the Court concludes as follows:

## Conclusions of Law

### I

The Court has jurisdiction of this controversy and of the parties hereto.

### II

The plaintiff has failed to sustain plaintiff's burden of proof that the defendant erroneously and illegally assessed and collected from plaintiff income tax for years 1943 and 1944 and erroneously and illegally failed and refused to allow plaintiff's claims for refund and to refund to plaintiff the amounts claimed.

### III

H. S. Anderson, Jr., Robert Anderson and John Anderson purchased the interest of H. S. Anderson, deceased, in the two partnerships known as H. S. Anderson Co. and Anderson Supply Co. of Alaska and not specific assets or specific contracts by the payment to the estate of the father of the sums of $75,000 and $40,000.

### IV

The plaintiff has not overpaid plaintiff's income tax for either 1943 or 1944.

### V

The sums paid by H. S. Anderson, Jr., and his brothers for their interest in the California and Alaska partnerships are not deductible as expenses under any provisions of the Internal Revenue Code, are not amortizable, cannot be capitalized and depreciated and did not give rise to deductible losses in 1943 or 1944 or loss carrybacks from 1944 to 1943.

### VI

Defendant is entitled to judgment that the plaintiff take nothing and for dismissal of the complaint with prejudice, and for its costs.

## Judgment, No. 12044–C Civil

The above case came on regularly for trial on January 28 and 29, 1954, before the Hon. James M. Carter, United States District Judge, sitting without a jury, was consolidated for trial with the cases of Ethel H. Anderson v. United States of America, No. 12045–C; Robert W. Anderson v. United States of America, No. 12046–C; Gloria S. Anderson v. United States of America, No. 12047–C; and John Hardy Anderson v. United States of America, No. 12048–C; and evidence both oral and documentary having been received and the matter having been submitted on the evidence, written memoranda and oral argument, and the Court having duly considered the same and on June 30, 1954, having filed its Memorandum of Decision, and having filed its Findings of Fact and Conclusions of Law and ordered that judgment be entered for the defendant in accordance with said Findings and Conclusions:

Now, therefore, it is hereby ordered, adjudged and decreed that plaintiff take nothing by his complaint, that the above entitled action be dismissed with prejudice, and that defendant have judgment for and shall recover from plaintiff the amount of defendant's costs to be taxed by the Clerk of this Court in the sum of $———.