PETER BALABAN AND VEGAS–WESTERN CAB, INC., APPELLANTS, *v.* BANK OF NEVADA, ANDREW MARIS, PETER NOGIEC AND CHARLES ROSEN-BAUM, RESPONDENTS.

No. 5981

December 16, 1970                    477 P.2d 860

*E. M. Gunderson* and *Larry C. Johns,* of Las Vegas, for Appellant Vegas-Western Cab, Inc.

*Harry J. Mangrum, Jr.,* of Las Vegas, for Appellant Peter Balaban.

*Alfred Becker,* of Las Vegas, for Respondent Bank of Nevada.

*Peter Flangas,* of Las Vegas, for Respondents Andrew Maris and Peter Nogiec.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal by Peter Balaban from an order of the lower court confirming sale of the interest of the Estate of Bayne C. Simpson, deceased, in the Desert Cab Company to Respondents Maris, Nogiec and Rosenbaum, and an appeal by Vegas-Western Cab, Inc., an unsuccessful bidder at that sale, from the same order. Respondent Bank of Nevada is administrator with will annexed of the estate. We reverse those orders and remand the cause for further proceedings.

Bayne C. Simpson, the deceased, and Peter Balaban, appellant, entered into a partnership agreement to operate a taxicab business in the Las Vegas area known as Desert Cab Company. Simpson died on November 21, 1964, leaving a will which bequeathed his interest in the cab company to his wife and a former sister-in-law. There was some confusion at first whether Simpson alone owned the cab company, but it was later conceded the business was equally owned by Simpson and Balaban as partners, and its value was appraised at $8,000. We do not know if this figure represents the gross value of the partnership assets, the net value after deducting partnership creditor obligations, or the partnership surplus.

For a period of two years following Simpson's death, the Bank, with court approval, operated the cab business on behalf of the estate through one Robert Simpson, who at the end of that period concluded it could not be operated profitably and gave it up. Balaban apparently did not object to nor contest that handling of the matter. The Bank, contending there were not other sufficient assets in Simpson's estate to pay creditors, filed a petition seeking to sell the Desert Cab Company. Balaban objected to the sale and asserted that as surviving partner he was entitled to one-half the assets of the company and an accounting. The Bank then filed a petition for authority to compromise Balaban's objections and to liquidate the partnership assets. The Bank, acknowledging the cab company was a partnership with Balaban, tendered to the court an agreement to sell the estate's interest to him. The court refused the agreement and ordered the estate's interest to be sold at public auction. Balaban objected to that order.

Confusion enters the proceedings at this point. The court's order directing the administrator to sell decedent's interest in the cab company states that it was "an interest in the Desert Cab Company" but goes on to say that "the sale of the cab company is necessary and in the best interest of the Estate." The Bank's notice of sale offered to receive bids for "All the Estate's right, title, interest of the Desert Cab Company located in Las Vegas, Nevada." One of the terms in that notice was that "said sale will include all physical assets."

At the sale, two bids were received, one from Vegas-Western Cab for $10,505, and one from Maris, Nogiec and Rosenbaum for $14,005. The Bank accepted the latter bid and sought confirmation of the sale. Vegas-Western opposed confirmation, contending the bid by Maris, Nogiec and Rosenbaum did not conform to the notice of sale and that its bid of $10,505 was the highest and best bid. Balaban also objected to the sale and stated that he was willing to pay the value of the Estate of Simpson in the cab company at the time of its dissolution. The court overruled both objections, found that "a petition for sale of Desert Cab Company" was filed by the administrator, and confirmed the "sale of the estate's interest in the Desert Cab Company according to its terms" and "upon approval of the Nevada Public Service Commission" to Maris, Nogiec and Rosenbaum for $14,505. It is from those orders these appeals are taken.

The issues are these:

I.   Whether the lower court erred in ordering a sale of a deceased partner's interest in a partnership including the physical assets of the partnership.

II.   Whether an unsuccessful bidder has standing to object to the confirmation of sale.

1.   We must decide in this appeal the interplay between the Uniform Partnership Act (NRS Ch. 87)[1] and certain provisions in the probate code (NRS Chs. 143 and 148) as they bear on the facts in this case and to determine if the lower court construed and applied those sections correctly.

2.   Pursuant to the Uniform Partnership Act (NRS 87.240), the property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management.

The first right confers an equal right with his partners to possess specific partnership property (NRS 87.250(2)(a));[2]

[1]Stats. Nev. 1931, ch. 74, at 112.

[2]See also State v. Elsbury, 63 Nev. 463, 468, 175 P.2d 430 (1946).

the right in specific property is not assignable except where the rights of all parties in the same property are assigned (NRS 87.250(2)(b)); his right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership (NRS 87.250(2)(c)); on death of a partner his right in specific partnership property vests in the surviving partner (NRS 87.250(2)(d)); and his right in specific partnership property is not subject to dower, courtesy, or allowance to widows, heirs or next of kin (NRS 87.250(2)(e)).

As to the second of his partnership rights, his interest in the partnership is his share of the profits and surplus, and the same is personal property (NRS 87.260). This right is the same as it was at common law. The legal nature of this interest was defined by this court in State v. Elsbury, supra, at 468, where it was held: "A partner has no individual property in any specific assets of the firm. Instead, the interest of each partner in the partnership property is his share in the surplus, after the partnership debts are paid and the partnership accounts have been settled. Until that time arrives, it cannot be known what property will have to be used to satisfy the debts and, therefore, what property will remain after the debts are paid."

The third partnership property right restricts partnership management personally to the partners, and while he may assign his partnership rights, the only right acquired by his assignee is a share in the profits (NRS 87.270 and 87.180(7)).

3. The probate code also bears upon the issues presented here. The rights of a surviving partner are defined in NRS 143.040, which reads:

"1. When there was a partnership existing between the testator or intestate, at the time of his death, and any other person, the surviving partner shall have the right to continue in possession of the effects of the partnership and to settle its business, but the interests of the deceased shall be included in the inventory and appraised as other property.

"2. The surviving partner shall proceed to settle the affairs of the partnership without delay, and shall account to the executor or administrator, and pay over such balance as may be, from time to time, payable to him as the representative of his testator or intestate.

"3. Upon the application of the executor or administrator the court or judge may, whenever it may appear necessary, order the surviving partner to render an account, and in case

of neglect or refusal may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the deceased could have maintained.

"4. Upon any sale of a partnership interest the surviving partner may be a bidder."

Sale of partnership interest is governed by NRS 148.210, which reads: "Partnership interests or interests belonging to an estate by virtue of any partnership formerly existing, an interest in personal property pledged, and choses in action, may be sold in the same manner as other personal property. Before confirming the sale of a partnership interest, whether made to the surviving partner or to any other person, the court must carefully inquire into the condition of the partnership affairs, and must examine the surviving partner, if in the county and able to be present in court." It should be noted this section deals with a sale of a partnership interest but does not attempt to legally define or describe that interest.

4. Certain inescapable conclusions must follow from the application of those statutes to the facts in this case. On Simpson's death, Balaban, as the sole surviving partner, became vested by operation of law with title to all the assets of the partnership. It was Balaban's duty, as well as the administrator of Simpson's estate, to use the partnership assets for partnership purposes until it could be terminated (NRS 87.250(2)(d)). No interest in any of the physical assets of the Desert Cab Company could be sold by the administrator of the estate of the deceased partner, Simpson. The only interest which could be sold was the interest of the deceased partner in the partnership. NRS 87.260; State v. Elsbury, supra. This interest was the same as the partner held during his lifetime, namely, a share of the profits and surplus.

Following dissolution of the partnership by the death of Simpson, his estate was entitled to have his interest in the partnership ascertained as of that date and to receive as an ordinary creditor an amount equal to his interest in the dissolved partnership with interest, or at the option of the administrator, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership (NRS 87.420). The administrator also had the right to an accounting against the person or partners continuing the business, absent any agreement to the contrary, accruing as of the date of dissolution (NRS 87.430).

Instead of following that course, the lower court allowed the administrator to sell either the entire cab company, Simpson's interest in it or in specific partnership property, i.e., the Public Service Commission's certificate of public necessity and convenience. Such an order was not permissible, and the purported sale must be set aside and remanded to the lower court for determination of Simpson's interest in the partnership and offer only that interest for sale (NRS 148.210).

At the new sale to be held, Balaban may be a bidder, but he is given no preferential advantage over any other bidder (NRS 143.040(4)). The lower court's concern must be to see that the estate receives fair value for the deceased partner's interest (NRS 148.210) and to require, if demanded by the administrator, an accounting of the partnership business (NRS 87.430).

Should we approve the order entered by the lower court regarding sale of the partnership property, we would be subjecting the surviving partner to future litigation as to what had been sold and the value of Simpson's interest.

5.   The lower court also erred in allowing Vegas-Western Cab, Inc. to object to the confirmation of the sale. NRS 148.070 provides that, "Any person interested in the estate may file written objections to the confirmation of the sale and may be heard thereon, and may produce witnesses in support of his objections." While this court has never ruled on that exact question, other courts have held that an unsuccessful bidder is not a person interested in the estate. In re Scholes' Estate, 301 P.2d 172 (Wash. 1956); In re Van Der Werf's Estate, 53 N.W.2d 238 (Iowa 1952). We subscribe to that view.

Accordingly, the order confirming sale is reversed. The cause is remanded to the lower court for an accounting between the living and the deceased partners and a determination of Simpson's interest in the partnership.

If the accounting indicates the partnership debts exceed the value of the partnership assets, there is no interest belonging to Simpson's estate. If the accounting indicates the partnership assets exceed in value the partnership debts, there will then exist a surplus to which the estate is entitled according to the deceased partner's share. The estate is entitled to have that

interest in the partnership ascertained as of the date of dissolution and to receive as an ordinary creditor an amount equal to the deceased partner's interest in the dissolved partnership together with interest, or at the option of the administrator, in lieu of the interest, the profits attributable to the use of the deceased partner's right in the property of the dissolved partnership (NRS 87.420). If the surviving partner is not willing to pay over that surplus in dollars to the estate, then the interest can be sold, at which sale the surviving partner can be a bidder. If the surviving partner acquires that interest, title thereafter vests in him as the sole owner. If a third person acquires the interest of the deceased partner, all he acquires is a share in the profits and surplus of the partnership without a correlative right to share in the operation and management of the partnership. He retains, however, the right to demand an accounting and to demand dissolution and termination of the partnership.

ZENOFF, BATJER, and THOMPSON, JJ., and BARRETT, D. J., concur.