LLOYD G. TUPPER, AKA LLOYD G. TUPPER, TRUSTEE, LLOYD G. TUPPER, AS TRUSTEE, GERALD K. SHEPARD AND SHEPARD & TUPPER, INC., A NEVADA CORPORATION, APPELLANTS, *v.* RAY A. KROC AND JANE E. KROC, RESPONDENTS.

No. 6513

LLOYD G. TUPPER, LLOYD G. TUPPER, AS TRUSTEE, LLOYD G. TUPPER, AS GENERAL PARTNER OF T & K ENTERPRISES NUMBER 1, A NEVADA LIMITED PARTNERSHIP, LLOYD G. TUPPER, AS GENERAL PARTNER OF T & K ENTERPRISES NUMBER 3, A NEVADA LIMITED PARTNERSHIP, LLOYD G. TUPPER, AS GENERAL PARTNER OF T & K ENTERPRISES NUMBER 4, A NEVADA LIMITED PARTNERSHIP, T & K ENTERPRISES NUMBER 3, A NEVADA LIMITED PARTNERSHIP, T & K ENTERPRISES NUMBER 4, A NEVADA LIMITED PARTNERSHIP, AND SHEPARD & TUPPER, INC., A NEVADA CORPORATION, APPELLANTS, *v.* RAY A. KROC, RESPONDENT.

No. 6517

March 2, 1972                    494 P.2d 1275

[Rehearing denied March 30, 1972]

*George, Steffen & Simmons,* of Las Vegas; *Fulop, Rolston, Burns & McKittrick,* of Beverly Hills, California, for Appellants.

*Lionel Sawyer Collins & Wartman,* of Las Vegas; *Sonnenschein, Levinson, Carlin, Nath & Rosenthal,* and *Frederick Lane,* of Chicago, Illinois, for Respondents.

## OPINION

By the Court, BATJER, J.:

These two cases were consolidated for the purpose of appeal because the same legal issues are involved in each.

Lloyd G. Tupper, appellant, and Ray A. Kroc, respondent, entered into three limited partnerships for the purpose of holding title to and leasing parcels of real estate. Tupper was the general partner, Kroc was the limited partner and each held a fifty percent interest.

Kroc filed an action alleging that Tupper had mismanaged and misappropriated funds from these partnerships and requested that they be dissolved and that a receiver be appointed. Pending the final outcome of that action the trial court appointed a receiver to manage the three business organizations. Prior to the date on which the complaint for dissolution had been filed, Tupper had on several occasions been unable to pay his share of the partnerships' obligations. Kroc on those occasions personally contributed the total amounts owed by the partnerships, and in return accepted interest bearing notes from Tupper in amounts equal to one-half of the partnerships' debts paid by him. Kroc thereafter filed an action against Tupper to recover on those notes and was awarded a summary judgment in the amount of $54,-609.02.

In an effort to collect on that judgment, Kroc filed a motion

pursuant to NRS 87.280[1] requesting the district court to charge Tupper's interest in the partnerships with payment of the judgment and for the sale of Tupper's interest to satisfy the judgment. On June 12, 1969, a charging order was entered directing the sheriff to sell all of Tupper's "right, title and interest" in the three partnerships and to apply the proceeds against the unsatisfied amount of the judgment. Tupper was served with notice of the sale, but he took no action to redeem his interest. The sale was held on June 27, 1969, and Kroc purchased Tupper's interest for $2,500.

Kroc filed a motion to terminate the receivership on March 12, 1970, contending that he was the sole owner of the partnerships and that the need for a receiver had ceased. On May 18, 1970, the appellants filed an objection to the respondents' motion to terminate the receivership, and a motion to set aside the sale conducted pursuant to the charging order. The trial court denied the appellants' motion to set aside the sale, and granted the respondents' motion to terminate the receivership and discharge the receiver. It is from these two orders that this appeal is taken.

The appellants contend that the trial court erred when it confirmed the sale of Tupper's interest in the three partnerships because (1) Kroc failed to affirmatively show that a sale of Tupper's interest in the partnerships was necessary; (2) a partner's interest in a partnership is not subject to a sale in satisfaction of a judgment; (3) it was improper to nominate the sheriff to conduct the sale which was irregularly and improperly held; (4) the sheriff's sale was inequitable in that the price paid for Tupper's partnership interest was grossly inadequate; (5) it

---

[1]NRS 87.280: "1. On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require.

"2. The interest charged may be redeemed at any time before foreclosure, or in case of a sale being directed by the court may be purchased without thereby causing a dissolution:

"(a) With separate property, by any one or more of the partners, or,

"(b) With partnership property, by any one or more of the partners with the consent of all the partners whose interests are not so charged or sold.

"3. Nothing in this chapter shall be held to deprive a partner of his right, if any, under the exemption laws, as regards his interest in the partnership."

was impermissible to conduct the sale of Tupper's interest in the partnerships while they were in receivership; and (6) the sale was in violation of the partnerships' agreements. Furthermore, the appellants contend that it was improper to discharge the receiver because Tupper retained such an equity in the partnership business and assets as to compel continuation of the receivership.

The appellant's contention that Kroc was required to affirmatively prove that a sale of Tupper's interest in the partnerships was necessary before a sale could be ordered was not raised in the court below, but raised for the first time in this appeal. Upon the rule announced in Cottonwood Cove Corp. v. Bates, 86 Nev. 751, 476 P.2d 171 (1970) and Clark County v. State, 65 Nev. 490, 199 P.2d 137 (1948), that a party on appeal cannot assume an attitude or accept a theory inconsistent with or different from that at the hearing below, we will not consider that issue. Also, this issue amounts to an attack upon the validity of the charging order and the appellants concede that the charging order is not under attack.

The charging order was properly entered by the district court against Tupper's interest in the three partnerships. NRS 87.280; Balaban v. Bank of Nevada, 86 Nev. 862, 477 P.2d 860 (1970); State v. Elsbury, 63 Nev. 463, 175 P.2d 430 (1946). The district court also was authorized, in aid of the charging order, to make all orders and directions as the case required. NRS 87.280(1). Pursuant to the provisions of this statute the district court was authorized to appoint a receiver to act as a repository for Tupper's share of the profits and surplus for the benefit of Kroc, or as the court did here, order the sale of Tupper's interest. NRS 87.280(1)(2); Frankil v. Frankil, 15 D. & C. 103 (Phila. Co. 1928); see also 87.320(2). In Kroc's application for the order charging Tupper's interest in the partnerships he requested an order directing a sale of that interest. Likewise in the notice to Tupper and his attorneys they were advised that Kroc was seeking a sale of Tupper's interest. The application and notice afforded Tupper an opportunity to take whatever steps he deemed necessary to either limit the charging order or prevent the sale.[2] Tupper was allowed 30 days to file

[2]If only a charging order had been entered or had the court in the charging order appointed a receiver under NRS 87.280, to receive Tupper's share of the partnerships' profits or upon dissolution his share of the surplus instead of ordering a sale, then upon receipt by Kroc of

an appeal from the order charging his interest in the partnerships and ordering the sale. NRCP 73. He did not appeal from that order, but instead waited nearly a year after the sale was made before filing a motion to set it aside. The appellants are now estopped to question the propriety of the charging order.

Although the appellants concede that the charging order is not under attack they continue a collateral attack by insisting that the sale of Tupper's interest in the partnerships authorized by the charging order was void. One of those contentions of irregularity is based upon the fact that an accounting "to determine the nature and extent of the interest to be sold" was not required by the district court before it entered its order authorizing the sale. In support of this contention the appellants rely upon Balaban v. Bank of Nevada, supra. Although we declared the sale in that case to be void and ordered an accounting, it is inapposite to support a claim that the sale in this case is void. In *Balaban* the notice of sale advised that "said sale will include all physical assets." This was impermissible and for that reason we set the sale aside. Furthermore, *Balaban* concerned a dissolution of a partnership by death, its winding up and the interplay of the Uniform Partnership Act (NRS Ch. 87) and the probate code (NRS Chs. 143 and 148). Within those chapters are found special provisions and requirements for an accounting (NRS 143.040; NRS 87.430; NRS 148.210) which are not found in the statute authorizing the charging order (NRS 87.280). An accounting prior to the sale of Tupper's interest was not compelled in this case.

The appellants also contend that Tupper's interest in the partnership was inadequately described. Anyone reading or relying on the notice of sale was, as a matter of law, deemed to understand that by statute the sale of Tupper's interest in the partnerships consisted of a sale of his share of the profits and surplus and no more. NRS 87.240; NRS 87.260; NRS 87.280. Any further or more extensive description would have been confusing or redundant. An accounting might have revealed

---

an amount sufficient to satisfy the judgment against Tupper entered on April 30, 1969, Tupper would have been restored to his right to receive his share of the profits or upon dissolution his share of the surplus; however, when his interest in the partnerships was sold he was forever foreclosed from receiving any profits or surplus from the three partnerships.

the amount of current profits, if any, or the estimated value of the surplus, if any, but it would not have added anything to the description of Tupper's interest beyond that found in NRS 87.260.

Pursuant to NRS 87.280(1) the district court was authorized to make any order which the circumstances of the case required. That statute authorized the appointment of the sheriff of Clark County to sell Tupper's interest in the partnerships, and authorized Tupper's interest to be sold in accordance with the provisions of NRS 21.130(2)[3] at a time certain on June 27, 1969. Because this was a judicial sale authorized by NRS Ch. 87, and not an execution sale, the district court was not bound to have Tupper's partnership interest sold in strict compliance with NRS 21.130(2) but the court was free, pursuant to NRS 87.280(1), to order any notice procedure that it deemed reasonable. Therefore, it was authorized to modify the notice requirements of NRS 21.130(2) by requiring that Tupper's interest be sold at 9:00 a.m. on June 27, 1969. The fact that the sale was conducted fourteen days after the notice of sale was posted by the sheriff has no effect upon the validity of the sale and can be construed to have inured to the benefit of Tupper.

The appellants' contention that the price paid by Kroc for Tupper's interest in the three partnerships is inadequate, is without merit. The mode for determining the value of Tupper's interest in the partnerships was by a public sale. See McMillan v. United Mortgage Co., 82 Nev. 117, 412 P.2d 604 (1966). The fair market value of $2,500 was established by Kroc's bid at the sheriff's sale. The respondents were under no duty or obligation to support or justify that price and the entire burden was upon the appellants to prove its inadequacy. Thus it became a question of fact to be determined by the trial judge who heard the testimony and observed the witnesses. Douglas Spencer and Associates v. Las Vegas Sun, Inc., 84 Nev. 279,

---

[3]NRS 21.130(2): "In case of other personal property, by posting a similar notice in 3 public places of the township or city where the sale is to take place, not less than 5 nor more than 10 days before sale, and, in case of sale on execution issuing out of a district court, by the publication of a copy of the notice in a newspaper, if there be one in the county, at least twice, the first publication being not less than 10 days before date of sale."

439 P.2d 473 (1968). We will not substitute our judgment for that of the trial judge as to the weight given to evidence. Richfield Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 188, 452 P.2d 462 (1969).

The appellants seek to enlist the aid of the doctrine of *custodia legis*[4] to support their claim that it was impermissible to conduct the sale of Tupper's interest in the partnerships' assets and business but not the interest of a partner in the partnerships. Tupper's interest in the partnerships, i.e. his right and title in the profits and surplus, were his personal property and not partnership property in the custody of the receiver. NRS 87.260.[5]

The appellants contend that the sale amounted to an involuntary assignment of Tupper's interest in the partnerships and is in violation of the partnership agreements which preclude a partner from assigning his interest. We do not agree. A sale made pursuant to a charging order (NRS 87.180) of a partner's interest in a partnership is not an assignment of an interest in a partnership. See NRS 87.270. Furthermore, the partnership agreements could not divest the district court of its powers provided by statute to charge and sell an interest of a partner in a partnership.

Finally the appellants contend that because Tupper retained an equity in the partnerships' business and assets, the district court erred when it discharged the receiver. Unfortunately for the appellants this is not true. After Kroc bought all of Tupper's interest in the partnerships, i.e. all of his right and title to the profits and surplus, Kroc was entitled to all of the profits and all of the surplus. "Surplus" is the excess of assets over liabilities. Balaban v. Bank of Nevada, supra; State v. Elsbury, supra; Anderson v. United States, 131 F.Supp. 501 (S.D.Cal. 1954). After the sale Tupper had no immediate or future rights to any profits or surplus or any equity whatever in the partnership property, and therefore he had no valid reason to insist on a continuation of the receivership.

Although as a matter of law the respondents were entitled to have the receivership terminated and the receiver discharged,

---

[4]The phrase "custodia legis" means in the custody of the law. Hopping v. Hopping, 10 N.W.2d 87 (Iowa 1943); Stockwell v. Robinson, 32 A. 528 (Del. 1892).

[5]NRS 87.260: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

the wisdom of that request, short of the dissolution of the partnerships, is questionable, for as soon as the receiver was discharged Tupper had the authority under NRS Ch. 87, as well as the partnerships' agreements, to assert his right to participate in the management. By purchasing Tupper's interest in the partnerships Kroc did not divest Tupper of his other property rights. (NRS 87.240.)

The receiver was appointed at the request of Kroc, now Tupper wants the receiver to be reappointed to protect Tupper as a general partner from liability that might be incurred through excessive partnership debts. At a glance it might seem that Tupper's fears have some merit. However, as a matter of law, at the moment the receiver was discharged Tupper's right to participate in the management of the partnerships (NRS 87.240) was restored, and as the general partner he would, at least theoretically, be able to prevent the partnerships from incurring liabilities in excess of assets.

The orders of the district court from which these appeals have been taken are affirmed.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.