JAMES F. ABEL, AS ADMINISTRATOR OF THE ESTATE OF ALBERT A. ABEL, ALSO KNOWN AS A. A. ABEL, DECEASED, APPELLANT, v. ALBERT M. LOWRY, RESPONDENT.

No. 3656

May 7, 1951.

231 P.2d 191.

*Gordon W. Rice,* of Reno, for Appellant.

*Ernest S. Brown,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

1. Did the district court sitting in probate have jurisdiction to vacate a prior order approving a compromise agreement entered into between the administrator and a third party claiming ownership of certain notes and mortgages?

2. If it had such jurisdiction, what effect did such vacating order have upon the status of the compromise agreement?

These questions arise out of a judgment of the district court in favor of the defendant in an action brought by the administrator to recover possession of the notes

and mortgages involved. The plaintiff's appeal, however, leads us first to a consideration of the history of the probate proceedings. At the time of the death of the intestate there were in a safe-deposit box, maintained jointly by the intestate and defendant,[1] approximately $7,000 government and municipal bearer bonds and $30,000 in notes secured by mortgages or deeds of trust. He died May 22, 1946, and on February 21, 1947, his brother James F. Abel was appointed administrator. The decedent and the respondent were associated in business, and although respondent did not expend any of his own funds for these securities, the same were acquired in a common or joint ownership by the two of them. Shortly after the death of decedent and the appointment of the administrator, respondent took possession of the contents of the safe-deposit box. Beginning in March, 1947, the administrator's attorney and respondent's attorney had numerous conferences relative to the ownership of all of these securities. During all of these conferences both attorneys believed that the notes and mortgages belonged to the deceased and respondent as joint tenants with right of survivorship and not as tenants in common, and that upon the death of A. A. Abel the said notes and mortgages became the property of respondent as the surviving joint owner. On September 24, 1947, the parties executed a compromise agreement with reference to the ownership of all of the securities found in the safe-deposit box. The agreement recited simply that whereas respondent had in his possession the $7,000 government and municipal bonds (describing them) and also had in his possession the $30,000 notes, mortgages and deeds of trust (describing them) and "Whereas a dispute has arisen between

[1]Nothing in the record indicates the nature of any contract with or instructions to the bank with reference to the safe-deposit box. During the oral argument, in answer to a question by one of the justices. it was stated that neither party made any point of the nature of such contract, but that as a matter of fact both keys to the box were found among the personal effects of the decedent.

the first and second party as to the ownership of the above items of property; and whereas they have agreed that the bonds and the interest thereon as aforesaid are the property of the estate of A. A. Abel, deceased, and the notes, mortgages and trust deeds aforesaid are the property of Albert M. Lowry," it was agreed that the administrator should petition the court to confirm the agreement and that both parties would use their best efforts to secure such order of confirmation, and "that upon receiving a certified copy of said order of court" the administrator would receive the $7,000 bonds and interest and would release Lowry from all claims or demands of the estate growing out of any of the notes, mortgages or deeds of trust.

On November 13, 1947, the probate court, on petition and notice and after hearing, confirmed the agreement, and respondent thereupon delivered to appellant the $7,000 bonds and some $200 interest. On March 24, 1948, the administrator served notice upon respondent's attorneys and upon the local attorneys for absent heirs, that he would on April 5, 1948, move for an order "vacating and setting aside" the court's order of November 13, 1947, approving and ratifying the compromise agreement and for an order "disapproving and holding for naught said compromise agreement."

The motion to vacate the approval of the agreement was submitted on a written agreed statement of facts reciting the conferences commencing in March, 1947, culminating in the agreement of September 24, 1947, and the order approving same; the belief of the attorneys, extending to a time subsequent to the court's approval of the agreement, that the notes, mortgages and deeds of trust created a joint tenancy in James F. Abel and Albert M. Lowry; that the administrator and his attorneys "now believe that in fact and in law" they were held by the parties as tenants in common and that the estate was entitled to a half interest therein; that the $7,000 bonds which had been delivered to the administrator by Lowry pursuant to the agreement had been

tendered back to Lowry, who refused to accept them and insisted that he would stand upon the agreement and the court's approval thereof. The motion was further supported by the affidavit of the administrator to the effect that the approval order was made solely because of mistake, inadvertence, surprise or excusable neglect; that the affiant and his attorney both thought that the notes had created a joint tenancy, etc.; that copies of correspondence attached to the affidavit showed the attorney's advice that they were so held; that it was not until after the order approving the agreement that the local attorney for absent heirs advised that in his opinion the instruments created a tenancy in common; that this was later confirmed in an opinion given by Reno counsel in reliance upon the case of Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918, 144 A.L.R. 1462; that the notes and mortgages were worth $30,000 and the estate was entitled to one half thereof; that the administrator would never have signed the agreement and would never have petitioned the court to approve the same, and verily believes that the court would not have approved the same had the administrator or his attorneys known in fact that said notes, mortgages and trust deeds were held as tenants in common, and that the heirs of the intestate were entitled to one half of the value thereof; that the $7,000 government and municipal bonds were likewise wrongfully taken from the safe-deposit box of the decedent after the appointment of the administrator; that the agreement and the approving order were therefore "grossly and manifestly unjust, unfair and inequitable in that by virtue thereof" the heirs were deprived of approximately $15,000.

The notes referred to were ten in number and in varying amounts. Each was payable to "A. A. Abel or A. M. Lowry." Each was secured by mortgage or deed of trust. The mortgages ran to "A. A. Abel or A. M. Lowry" as mortgagees. The deeds of trust named "A. A. Abel or A. M. Lowry" as beneficiaries.

After the entry of the order approving the settlement

agreement and after the local attorney for absent heirs had called the administrator's attention to the case of Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918, 144 A.L.R. 1462, in which this court on February 11, 1943, had decided that notes so payable created a tenancy in common and not a joint tenancy, the administrator consulted independent counsel in Reno who advised definitely that Newitt v. Dawe was controlling and that the notes, mortgages and deeds of trust here in question created an ownership in common and not a joint tenancy and that under their terms the estate was the owner of a half interest therein. Counsel for the administrator agreed that this advice was correct and that he would attempt to secure an order vacating the order approving the settlement agreement and setting aside such agreement. All of the correspondence was introduced in evidence and appellant's brief insists in many places that the basis for the settlement agreement and the court's approval thereof was the belief of appellant and his attorney and the court that the instruments had created a joint tenancy and that they had never seen the instruments themselves until after the order approving the settlement agreement.

Respondent's attorney insisted throughout the hearing of the motion to vacate the order approving the agreement and to set aside the agreement, that the probate court was without jurisdiction. The court's formal order of June 28, 1948, ordered that its former order of November 13, 1947, approving the agreement "be and the same is hereby set aside, annulled and held for naught, and the parties are restored to the same position and status as though said order had never been made or entered herein." It did not grant the motion to set aside the agreement itself.

The record shows that on November 6, 1948, the administrator filed a "complaint" entitled in the estate matter, alleging that Albert M. Lowry had in his possession the ten secured notes and refused to deliver them to the administrator, and praying that Lowry be cited

to appear and that he be required to deliver the notes, mortgages and deeds of trust to "complainant as administrator." Citation was issued and a hearing had and a minute order made concluding as follows: "The court being fully advised in the premises, ordered the application be denied; that the documents be held in status quo until the administrator has the opportunity to file an action, in the proper court, to determine title of the disputed property."

The present action was then filed, praying for the establishment of the estate's half interest in the notes and mortgages. Respondent's defenses comprised, first, a general denial, secondly, an affirmative defense claiming ownership as a surviving joint tenant and, third, a further affirmative defense claiming title under the compromise agreement. Appellant's reply to the second affirmative defense pleaded the vacating order. The trial court first properly struck the first affirmative defense under the holding of this court in Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918, 144 A.L.R. 1462, but it held that the defendant could properly assert as a special affirmative defense his rights under the compromise agreement whereunder he had become the owner of the notes and mortgages in question. In his written opinion the learned district judge properly held that his prior vacating order "left the agreement between plaintiff and defendant in the same status as before approval," yet he gave it full effective status by saying: "The defendant raised the compromise agreement as a defense, thus placing upon plaintiff the burden of pleading and proving the well recognized grounds in equity to compel the setting aside of the compromise agreement. Plaintiff sought to do this in his reply by standing on the bare allegation that the agreement was consummated and entered into because of mutual mistake, lack of consideration, and was manifestly unjust, unfair and inequitable. The burden of proving these allegations, if properly pleaded, rests with the plaintiff [, t]he existence of the compromise agreement being

admitted." The learned district judge then discusses the evidence and finds that there was no mutual mistake and that if there was a mistake, it was one of law and that in the absence of fraud it was not a ground for avoiding the compromise agreement. The conclusion of the learned judge is that the compromise agreement between the parties is a "binding and valid agreement settling the ownership of the notes, mortgages and trust deeds sought by the complaint as being the property of the defendant."

The presiding judge who entered such findings and judgment from which this appeal is taken was the same person as the probate judge who made the first order approving the compromise and who made the second order vacating such approving order. We are compelled to the conclusion that the learned judge, correct in his conclusion that the probate court had jurisdiction to entertain the motion to vacate the approving order, and supported by the evidence in concluding that the approving order had been made by inadvertence and mistake and without a showing that it was for the best interests of the estate, that it, without adequate consideration, had deprived the estate of approximately $15,000 in value and that the compromise agreement would never have been made but for the mistaken belief of counsel that the notes and mortgages were held in joint tenancy, and correct in his conclusion that his vacating order had left the compromise agreement in the status it occupied before the approving order, eventually fell into error in nonetheless treating the compromise agreement as a valid subsisting agreement. In the trial of the action itself he had correctly overruled the defendant's objections to plaintiff's proof that the probate court had vacated the order approving the agreement. The grounds of the objection were that the motion for the vacating order had been addressed to a court "without jurisdiction to entertain an application to set aside a compromise settlement contract, and furthermore, it amounts to the taking of property of the defendant

without due process of law." The court's reason for overruling the objection is not stated. It was apparently satisfied at the time that the vacating order was within the probate court's jurisdiction and that, being so, was not subject to collateral attack in the administrator's subsequent action to recover the notes and mortgages. See Wiggin v. Superior Court, 68 Cal. 398, 9 Pac. 646; Dockery v. Central Arizona L. & P. Co., 45 Ariz. 434, 45 P.2d 656. However that may be, we are in accord with the theory of the trial court's rulings up to the point that the court with one final stroke destroyed the result of those rulings and restored the compromise agreement to full, legal status, force and effect.

It is earnestly contended by respondent that the judgment must be affirmed for the reason that the probate court was without jurisdiction to make its vacating order of July 9, 1948, (1) because the order of November 13, 1947, approving the compromise agreement, was res judicata, subject only to reversal on appeal; (2) because respondent's rights had become vested through the carrying out of the compromise agreement thus approved, and that the vacating order purported to affect these rights, in a probate proceeding, to which he was not privy; (3) because, even though the vacating order purported only to set aside the approval order and not to set aside the compromise agreement itself, its effect (if valid) was to leave the compromise agreement without court approval and thus without legal status, and therefore to destroy the rights vested under it; (4) that, in so acting, the probate court attempted to exercise powers vested only in a court of general equity jurisdiction.

The argument is not without appeal, but has been repeatedly disposed of by the courts contrary to respondent's contentions. The motion for the vacating order was a direct attack upon the approval order. In Re Layton's Estate, Cal.App., 6 P.2d 305. Section 8640 N.C.L. 1929, provides that the court "may * * * relieve a party

or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." It also provides that "the court may, in furtherance of justice, * * * amend any * * * proceedings by * * * correcting a mistake · * * * in any other respect" and may, for good cause and after notice, "allow * * * an amendment to any * * * proceeding in other particulars." This court has repeatedly held that such remedial statute should be liberally construed to carry out its purpose. It is made applicable to the probate court by the provisions of sec. 9882.319 N.C.L., 1931–1941 Supp. Its provisions coincide in all material respects here in question with sec. 473 of the California Code of Civil Procedure. In an early case in that state the Supreme Court of California implied that a decree of distribution might be set aside by the probate court within the time specified in sec. 473 C.C.P., although the court was without jurisdiction to set aside its decree after that period. Estate of Hudson, 63 Cal. 454. The same court, in Re Pedrorena, 80 Cal. 144, 22 Pac. 71, against the claim that the court was without jurisdiction to set aside its decree of distribution, held definitely that it had such power when justice required that the motion to vacate the decree should be granted. In the same court the jurisdiction of the probate court was again attacked with reference to an order vacating an order and decree settling the final account and distributing the estate. In Re Hickey's Estate, 129 Cal. 14, 61 Pac. 475. The court there held that the probate court "clearly had jurisdiction to make the order, under § 473, C.C.P." In Re Ross' Estate, 140 Cal. 282, 73 Pac. 976, the Supreme Court of California approved an order vacating a decree of distribution on the petition of a minor heir not named in the will. The original decree had, under the terms of the will, distributed a dwelling house to a devisee and the effect of the vacating order was to subject that piece of property to the payment by the original distributee of his proportionate share of the estate to the minor

heir. The same court in Levy v. Superior Court, 139 Cal. 590, 73 Pac. 417, 418, reviewed the jurisdiction of the probate court to make an order vacating a prior order setting apart a homestead to the widow of the decedent. It was contended that the homestead order was final, that in making it the court exhausted its jurisdiction and that it had no power to review and vacate its own prior adjudication. The court held that, under sec. 473 C.C.P. made applicable to estate matters by sec. 1713 of the California Civil Code, the probate court had jurisdiction. As in the instant case, it was contended that after setting apart of the homestead it no longer belonged to the assets of the estate, but the court held that this could be so only while the homestead order stood as an existing valid order and did not prevent the reversing or the setting aside of the order either upon appeal "or upon any other authorized proceeding." In the more recent case of Moreland's Estate, 49 Cal. App.2d 484, 121 P.2d 867, it was said that Levy v. Superior Court expressly confirmed the jurisdiction to grant relief from a probate order under sec. 473 Cal. C.C.P., and upheld an order vacating the confirmation of a probate sale. See other cases therein cited. Bacon v. Bacon, 150 Cal. 477, 89 Pac. 317, recognizing that a decree of distribution was not subject to collateral attack, approved Pedrorena's Estate, supra, holding the vacating of the decree under sec. 473 C.C.P. to be a direct attack, and emphasized the right of direct attack in the case of mistake, either of the court or of the injured party, as well as by reason of fraud. The California Court of Appeal, In Re Johnson, 7 Cal.App. 436, 94 Pac. 592, considered the jurisdiction of the probate court to set aside a sale for inadequacy of consideration. The court said that the jurisdiction to grant such relief "is clearly shown" in Estate of Ross, supra, under the provisions of sec. 473 C.C.P.[2] See, also, Pacheco v. Del-

---

[2]Respondent seeks to distinguish this case because of the court's reference to the fact that in any event the executrix had for good cause rescinded the original agreement to sell, and that even with-

gardo, 46 Ariz. 401, 52 P.2d 479; 1 Bancroft's Probate Practice, 2d Ed., p. 176, n. 1.

We see no distinction in principle between the vacating orders in the foregoing cases and the vacating order here in question.

The jurisdiction being established, it is clear that under the facts presented to the probate court, it was not guilty of any abuse of discretion in vacating the order approving the compromise agreement. The vacating of the approval order left the compromise agreement without support. Without such approval, it had no legal effect. In Lucich v. Medin, 3 Nev. 93, 109, this court, by Mr. Chief Justice BEATTY, recognized the right to compromise a suit against the estate with the approval of the probate court, and added: "But the executor, without the advice of the court, had no right to make such a compromise." Section 203 of the Probate Act, there under consideration, empowering the court to authorize a compromise, is in all material respects the same as our present sec. 9882.198 N.C.L., 1931–1941 Supp.[3] Citing Lucich v. Medin, supra, an annotation on the power of an executor or administrator to compromise

out an order vacating the former confirmation of the sale, the purchaser was shown to have no interest in the property. This circumstance was simply recited as an additional ground for dismissing the writ of certiorari, the court having previously stated that the only question presented for review related to the jurisdiction of the probate court to enter the vacating order.

[3]"If a debtor of the decedent is unable to pay all his debts the executor or administrator, with the approval of the court, may give him a discharge upon such terms as may appear to the court to be for the best interest of the estate. A compromise may also be authorized by the court when it appears to be just and for the best interest of the estate. The court may also authorize the executor or administrator, on such terms and conditions as may be approved by it, to extend or renew, or in any manner modify the terms of, any obligation owing to or running in favor of the decedent or his estate. To obtain such approval or authorization the executor or administrator shall file a verified petition with the clerk showing the advantage of the settlement, compromise, extension, renewal or modification * * *"

a claim against the estate, 85 A.L.R. 199, 202, states that such compromise may be made in Nevada "only under the advice of the probate court." With this conclusion we are in accord.

Our conclusions eliminate the defendant's second affirmative defense setting up the compromise agreement. The only remaining issue, raised by the general denial, is the issue of the ownership of the notes, mortgages and deeds of trust, as to which issue Newitt v. Dawe is controlling. An undivided one-half interest therein is vested in the estate of the intestate. The present appeal does not submit to us any question for determination concerning the ownership of the $7,000 government and municipal bonds.

Respondent relies upon certain statements made by the court in Lucich v. Medin, 3 Nev. 93, indicating the right of the court to correct its own errors but not to reopen the proof as to accounts allowed, except where the account showed error on its face and if the mistake or error is only to be shown by going anew into the proof, this should be held as res adjudicata and not liable to be opened to new testimony. This statement must be considered in connection with the facts of that case, which are very different from the one at bar. Even if applicable, we should be inclined to hold that the order approving the so-called compromise agreement shows mistake and error on its face. It is true that the agreement recites that there was a dispute, but the agreement shows on its face that there was no dispute. It describes $30,000 worth of notes and mortgages in which, under the law of this state, the A. A. Abel estate owned a half interest, and then proceeds to give that half interest to respondent. The consideration for this sacrifice or waiver of $15,000 was the respondent's possible claim to an interest in, or to a part of, or possibly to the entire ownership of the $7,000 bonds.

The voluminous briefs of counsel discuss many other propositions of law, but in view of our conclusions we do not feel called upon to discuss them. The judgment of the district court is hereby reversed, and the case is remanded with instructions to enter judgment for the plaintiff as administrator establishing his undivided one-half interest in the notes, mortgages and deeds of trust in question. Appellant will be allowed his costs, which will not however include any part of 438 folios of district court briefs included in but which have no proper place in the bill of exceptions.

EATHER and MERRILL, JJ., concur.