A–MARK COIN COMPANY, INC., Appellant, *v.* THE ESTATE OF LaVERE REDFIELD, Deceased; NELL J. REDFIELD, LUANA W. MILES and CANDIDA LARENA, Coexecutrices of the Estate of LaVere Redfield; DOROTHY DESCHAMPS; RARE COIN GALLERIES, a Corporation; and BOWERS & RUDDY GALLERIES, a Corporation, Respondents.

No. 8769

July 26, 1978                                          582 P.2d 359

[Rehearing denied September 28, 1978]

*Lionel Sawyer & Collins,* of Las Vegas, and *Hawkins, Rhodes, Sharp and Barbagelata,* of Reno, for Appellant.

*Gerald Smith; Clel Georgetta; Eli Grubic; Gordon Rice; Woodburn, Wedge, Blakey, Folsom and Hug;* and *Vargas, Bartlett & Dixon,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

At issue is the power of the probate court to annul its order directing a private sale of the Redfield coin collection, and to direct instead, a public sale thereof.

The Estate of LaVere Redfield possessed 351,259 United States uncirculated silver dollars and 56,337 United States circulated silver dollars, a hoard having an appraised value of some $5,000,000. On November 4, 1975, the probate court authorized the Executrices of the estate to sell the coin collection to one or more buyers without the requirement of full disclosure, publication of notice and confirmation of sale. It was the court's belief, shared by those interested in the estate, that a private sale pursuant to NRS 148.170 would produce the best price, whereas a public sale would depress the coin market and significantly reduce the sale price of the collection.[1]

The Executrices, pursuant to such authorization, made an agreement with A–Mark Coin Company, Inc., to sell the collection for $5,910,142. The sale was to occur January 19, 1976. That sale did not take place. Ten days before it was to happen, Rare Coin Galleries and Bowers & Ruddy Galleries, as coadventurers, submitted an unconditional offer in court to purchase the hoard for $6,501,156 and tendered a cashier's check in that amount.

This occurrence prompted the court to reconsider its November 4 order authorizing a private sale. The sale had not been consummated. It was evident that a better price could be obtained if public bidding was allowed.[2] Accordingly, the

[1]NRS 148.170: "Perishable property and other personal property which will depreciate in value if not disposed of promptly, or which will incur loss or expense by being kept, and so much other personal property as may be necessary to provide the family allowance pending the receipt of other sufficient funds, may be sold without notice, and title shall pass without confirmation; but the executor, administrator or special administrator is responsible for the actual value of the property unless, after making a sworn return, and on a proper showing, the court shall approve the sale." The court treated the coin collection as similar to perishable property which would depreciate in value.

[2]The court stated: "However, the events which have transpired in this court this morning have demonstrated as an actual fact that this court's November 4, 1975 order was made and entered upon an apparently erroneous assumption, and all the fears upon which the order was based have now been effectively eliminated by the Bowers and Ruddy Galleries' unconditional bid, as stated. No one could have anticipated this, neither the court nor the estate counsel.

court, on January 14, 1976, found that: the order of November 4, 1975, was erroneously entered, and that a sale pursuant to NRS 148.170 was not appropriate and would not yield the best price; that the court was obliged to obtain the best price for the estate; that the collection should be sold pursuant to NRS 148.190.[3] Consequently, the court annulled the order of November 4, accepted the unconditional bid of Rare Coin Galleries and Bowers & Ruddy Galleries subject to further bidding at a public sale to be held January 27, 1976.

On January 27, 1976, public bidding occurred. A–Mark Coin Company, Inc., submitted the highest bid, $7,300,000. The court confirmed a sale of the coin collection to that company.

Notwithstanding its status as the successful bidder, A–Mark Coin Company, Inc., has appealed from two orders: the order directing a public sale, and the order confirming sale of the coin collection to it for $7,300,000. It claims an enforceable contract with the Executrices to purchase the coin collection for $5,910,142, and that the court lacked power to interfere with that contract at the insistence of Rare Coin Galleries and Bowers & Ruddy Galleries who allegedly were without standing to intrude. We turn to consider these contentions.

---

"The Court has concluded as a result that the question of standing has now become moot, and since that has now become moot, there is no question but that the court is duty bound to accept the bid which is for the best interest and greatest benefit to the estate, and that is to accept the highest price in the scope of the law. This court has certain statutory duties with respect to probate of estates which it is duty bound to follow, separate and apart from the desires of the heirs or persons involved.

"This will not be the first time that this court has vacated and set aside an order when convinced it was erroneously entered for whatever reason. Therefore, the November 4, 1975 order is vacated and set aside, and Nell Redfield and Dorothy DesChamps and all the three executrices of the estate are each and all relieved from any and all liability to the Markoff firm for any and all damages for breach of contract in regard to the December 17, 1975 contract for the purchase of the coins, since it was made pursuant to this court's order, based upon, as it now turns out at least, an honest mistake of fact and/or other matters which the court will not attempt to hear or not attempt to define or indicate."

[3]NRS 148.190:

"1. Except as provided by NRS 148.080, 148.170 and 148.180 and in summary administration under chapter 145 of NRS, the executor or administrator may sell personal property of the estate only after he has caused notice to be published at least 10 days before the sale in one or more issues of a newspaper published in the county where the proceedings are pending, if there is such a newspaper; if not, then in one having general circulation in the county. The notice shall include the time and place of sale, and a brief description of the property to be sold.

"2. Public sales must be made at the courthouse door, at some other public place, at the residence of the decedent or at a place designated by the executor or administrator; but no sale may be made of any personal property which is not present at the time of sale, unless the court shall otherwise order."

1. It is irrelevant whether Rare Coin Galleries and Bowers & Ruddy Galleries had standing to object to the private sale and themselves submit a bid. Their bid, whether properly submitted or not, caused the probate court to realize that the best interests of the estate would be served by a public sale rather than a private sale.[4] Therefore, on its own initiative, the court annulled its order authorizing a private sale, and directed a public sale.

A probate court has jurisdiction to vacate a prior order upon learning that it was entered through mistake. Abel v. Lowry, 68 Nev. 284, 231 P.2d 191 (1951). Our remedial rule, NRCP 60(b), contemplates such action.[5] The court may initiate relief from such an order on its own motion. Martin v. Leonard Motor El-Paso, 402 P.2d 954 (N.M. 1965); McDowell v. Celebrezze, 310 F.2d 43 (5th Cir. 1962). The court below was sensitive to its obligation. Its candor and wisdom in correcting an apparent mistake benefited the estate by $1,389,858. Its power to act as it did is established and, in our view, beyond question.

2. Since the probate court acted within its authority in nullifying prior authorization for a private sale and directing a public sale, we need not consider several other issues tendered by this appeal.

Affirmed.

MOWBRAY and MANOUKIAN, JJ., concur.

BATJER, C. J., concurring:

I concur in the result for a reason different than that

---

[4]In line with authority elsewhere, Balaban v. Bank of Nevada, 86 Nev. 862, 477 P.2d 860 (1972), held that an unsuccessful bidder is not "a person interested in the estate" entitled to object to court confirmation of a sale. Whatever relevancy that decision may have to the question of standing, it does not bear upon the power of a probate court, sua sponte, to annul a prior order to protect the best interests of the estate.

[5]NRCP 60(b): "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud, misrepresentation or other misconduct of an adverse party which would have theretofore justified a court in sustaining a collateral attack upon the judgment; (3) the judgment is void; or, (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that an injunction should have prospective application. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

announced by the majority. I believe the order entered by the district court on November 4, 1975, was null and void *ab initio* and that the order dated January 14, 1976, was the only valid order entered.

The only estate property which may be sold without notice with or without an order of the court is perishable property or other property which will depreciate in value if not disposed of promptly or which will incur loss or expenses by being kept. NRS 148.170. There is no evidence in this record to show that the silver dollars were incurring loss or expense in being kept, were depreciating in value or were perishable. The district court's finding and "belief" that a public sale would depress the coin market and significantly reduce the sale price of the collection were not valid reasons within the statutory scheme to support a private sale without notice. The order confirming the sale of the coin collection to appellant for $7,300,000 should be affirmed.

GUNDERSON, J., dissenting:

I must respectfully dissent.

The majority concludes a probate court has absolute power to set aside any estate sale *sua sponte* so long as the court's judgment is in the "best interests" of the estate. such analysis fails to note a significant jurisdictional problem posed by our statutory scheme, and ignores established principles dealing with standing to interfere with estate actions.

In October, 1975, the executrices filed a "Petition for Instructions Regarding Sale of Personal Property," seeking to sell a unique collection of 407,596 silver dollars. They sought instructions because one of them, Nell J. Redfield, the decedent's widow and heir at law, as well as Dorothy DesChamps, sole beneficiary of decedent's one-half community property interest in the collection, both believed detailed disclosure and description of the coins to the public at large would seriously depress the numismatic value of the collection. Consequently, they sought permission to sell the collection pursuant to the private sale provisions of NRS 148.170, rather than under NRS 148.190, which required publication of notice of sale, and confirmation in open court. The two remaining co-executrices doubted the applicability of NRS 148.170, and believed disclosure would not adversely affect the market price. Consequently, they joined with Nell J. Redfield in the petition for instructions.

At a November 4, 1975, hearing on the petition, the district court declared it was "satisfied that there is a real danger if this matter is opened up to public disclosure, and that there will be a diminishing value to the coin collection that is involved here.

. . ." The court then entered an "Order Authorizing Executrices to Sell Certain Personal Property Pursuant to N.R.S. Section 148.170."[1] Although notice of entry was given, no appeal was taken, the parties apparently accepting the court's determination.

Thereafter, the co-executrices and appellant A–Mark negotiated and executed a purchase agreement on December 17, 1975, selling the coin collection for $5,910,142. The purchase agreement was joined in, and agreed to, by Dorothy Des-Champs, the sole beneficiary of the estate, and by Nell Redfield individually, the widow and heir at law of the decedent. The price exceeded by more than 10 percent the appraised value of the property as determined by the court-appointed appraiser.

On December 18, 1975, two other coin dealers who had not seen the collection, Rare Coin Galleries and Bowers and Ruddy Galleries, instituted proceedings to prevent sale under the contract. They filed both a "Petition for Order to Inspect Personal Property and for Leave Thereafter to Bid Thereon," and a "Petition for Temporary Restraining Order and Preliminary Injunction and a Bid to Purchase Personal Property."

On December 29, 1975, the co-executrices, including the widow and heir at law, filed a motion to dismiss the petitions of the other coin dealers. The sole beneficiary later joined in the motion. At that time, all parties to the estate apparently were satisfied that the terms of the purchase agreement, including the sale price, were fair and equitable and in the best interests of the estate.

The district court subsequently held another hearing in January, and (1) vacated its prior order permitting sale pursuant to NRS 148.170, (2) canceled the existing contract with A–Mark, and (3) ordered a public sale. At the public sale, A–Mark was once again the successful bidder, but was now required to pay $7,300,000 for the collection.

---

[1]The order provided in pertinent part:

"   . . .

"3.   That there is a grave danger of loss to the estate if a detailed description of the coin collection is disclosed to the public;

"4.   That said coin collection constitutes personal property in the nature of 'perishable property' or 'other personal property which will depreciate in value if not disposed of promptly or which will incur loss or expense by being kept' as those terms are used in N.R.S. Section 148.170; and

"5.   . . .

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Nell J. Redfield, Luana W. Miles and Candida Larena, as Executrices of the Will of LaVere Redfield, deceased, be and they hereby are authorized to sell said coin collection pursuant to N.R.S. Section 148.170 to one or more buyers without the requirement of full disclosure, publication of notice and confirmation of sale in open court as required by N.R.S Section 148.190."

1. The majority concludes: "Since the probate court acted *within its authority* in nullifying prior authorization . . . we need not consider several other issues tendered by this appeal." (Emphasis added.) I cannot agree. In my view, the district court did not act "within its authority." The court lacked jurisdiction to *set aside* the A–Mark contract once it was executed on December 17,1977.

It is clear that once a sale takes place pursuant to NRS 148.170, no person may act to *prevent* the sale. The statute merely permits an action for *damages* if the sale by the executors results in a loss to the estate. NRS 148.170 was adopted verbatim from California Probate Code § 770. Authority reveals the determination to sell personal property as a depreciating asset, under such a private sale statute, presents a question of fact for the trial court if a party objects to the sale after it is made. In Re Atkins' Estate, 8 P.2d 1052 (Cal.App. 1932); *cf.* In Re Sherman's Estate, 297 P.2d 425 (Cal. 1956). Once such a sale is made, however, "title . . . pass[es] without confirmation." NRS 148.170. In any subsequent proceeding before the district court, "the executor, administrator, or special administrator is responsible [only] for the *actual value* of the property, . . ." (Emphasis added.) NRS 148.170; *see also* Goddard, 2 *California Practice, Probate Court Practice,* § 1021, 72–75 (3rd ed. 1977). Any right to file objections to prevent a sale applies only to provisions where title passes upon confirmation by the court. *See* NRS 148.060(1); NRS 148.080; *Goddard,* cited above, § 1021, 72–75;[2] § 1051, 108; Witkin, 7 *Summary of California Law, Wills & Probate,* § 470, 5904 (1974); *compare* In Re Depew's Estate, 149 P.2d 890 (Cal.App. 1944), *with* In Re Williamson's Estate, 310 P.2d 77 (Cal.App. 1957), [*and*] In Re Dargie's Estate, 91 P.2d 126 (Cal. App. 1939). Thus, the district court lacked jurisdiction to set aside the sale under NRS 148.170 once the contract with

---

[2]"Sale of depreciating property is often a misunderstood proceeding. Frequently the administrator wants his order before he completes the sale. Technically this is not possible. The sale must have been completed before it is reported and all that the order does it to establish the amount which the representative is chargeable in his accounts by reason of the sale. Unless the report clearly states that the sale has been made, the court cannot make its order approving the sale price. There may be no valid reason why the representative may not have a private understanding with the buyer that as between them the sale not be considered binding until the order is issued. The danger of this practice lies in the difficulty of later saying that the sale was not completed. In one case where a sale of depreciating property was reported and later the identical property was sold as personal property and confirmed, the court held that the second sale was void as title had passed as a sale of depreciating property. (Citing *Depew.*)

"The representative does not have to report the sale of depreciating property to make the sale effective. The only advantage of the order is to limit his responsibility to a fixed sum, the sale price."

A–Mark was executed on December 17, 1975, and equitable title passed.[3]

2. Nor can I agree with the majority's conclusion that the standing of Rare Coin and Bowers to intervene was "irrelevant." Other courts have long recognized "[o]nly persons in interest have any standing to invoke the aid of either a court of equity or the court of probate to set aside the sale of decedent's property under a court order." In Re Van Der Werf's Estate, 53 N.W.2d 238, 239 (Iowa 1952). "Strangers or third persons having no interest in the estate cannot make any attack on the sale." *Ibid.; see also* In Re Scholes' Estate, 301 P.2d 172 (Wash. 1936). "Persons in interest" have thus far been held to be heirs, devisees, legatees, creditors, purchasers from the estate, or parties with any title or interest in the property being sold. *See Van Der Werf,* cited above; *Scholes,* cited above; In Re Pearson's Estate, 33 P.451 (Cal. 1893); Collins v. Collins, 132 S.E. 389 (Ga. 1926). In Balaban v. Bank of Nevada, 86 Nev. 862, 867, 477 P.2d 860, 863 (1970) this court cited with approval both *Van Der Werf* and *Scholes,* and recognized that "an unsuccessful bidder is not a person interested in the estate," and therefore lacks standing to object to a confirmation of sale requested under NRS 148.070.[4]

In my view the standing concept recognized in *Balaban* becomes more imperative when a private sale under NRS 148.170 is made, because the statute was designed to prevent delay and resultant damage to an estate if executors could not quickly sell certain types of personal property. Here, both Rare Coin and Bowers were coin dealers who had not even seen the collection before filing their petitions to prevent the sale. They never attempted to demonstrate any interest in the estate which would give them standing to set aside the A–Mark contract with the executrices, heir at law, and beneficiary. Thus, I liken their status to the unsuccessful bidder who lacked standing in *Balaban.*

Moreover, I cannot agree that the standing issue was rendered moot because of the court's "*sua sponte*" action. As previously noted, the court lacked jurisdiction to proceed. The

---

[3]No contention has been raised on appeal that the coins could not be sold as a depreciating asset. Therefore, I cannot agree with JUSTICE BATJER that the court's November 4 order was "void *ab initio.*" The executors clearly had the power to sell the coins under NRS 148.170 with or without the court's authorization.

[4]NRS 148.070 provides:

"Written objection: Hearing; proof of notice. *Any person interested* in the estate may file written objections to the confirmation of the sale and may be heard thereon, and may produce witnesses in support of his objections. Before an order is made confirming a sale it must be proved to the satisfaction of the court that notice of the sale was given as prescribed by this Title, and the order of confirmation must show that such proof was made." (Emphasis added.)

record also clearly demonstrates that the court's actions were not *sua sponte,* but precipitated solely by the Rare Coin and Bowers petitions.

In this regard, it should be noted that the executrices, heir at law, and sole beneficiary, were clearly satisfied with the original A-Mark contract when it was executed on December 17. They wanted to complete the sale, and filed a motion in the district court to dismiss the Rare Coin and Bowers petitions. They reversed their position only after the contract was signed, and it became apparent a higher price could be obtained for the coins if the court set aside the contract. In similar situations other courts have estopped executors to change their position after they were responsible for procuring court action. *See* Consolidated Coppperstate Lines v. Frasher, 297 P.2d 692 (Cal.App. 1956); Bennett v. Bennett, 82 S.E.2d 653 (Ga. 1954); Cunningham v. Richardson, 122 P. 368 (Wash. 1912). I believe the parties in interest should be similarly estopped in the instant case.

3.  Finally, I note the majority opinion opens the door for officious intermeddling by parties without an interest in the estate, and who stand to lose nothing by their interference. If A-Mark had not been successful at the second auction, and lost the coins to another bidder, it is apparent that A-Mark would also be denied recovery for damages caused by Rare Coin's interference (i.e., for intentional interference with an existing contract), because the court acted in the "best interests" of the estate. I do not believe the legislature intended such a result. The rights of all the contracting parties must be given equal dignity. Contracts with an estate should not be regarded as obligations voidable at the pleasure of the probate court. To permit a court to set aside existing contracts merely because it would be in the "best interests" of the estate, ignores the "best interests" of those who deal with estates in good faith.

