MADISON HILLS LIMITED PARTNERSHIP II *v.* MADISON
HILLS, INC., ET AL.
(12278)

DUPONT, C. J., and FOTI and LAVERY, Js.

Argued January 18—decision released June 6, 1994

*Bernard Green,* with whom, on the brief, were
*Eric N. Gross* and *Joel Z. Green,* for the appellants
(defendants).

*Edwin L. Doernberger,* for the appellee (plaintiff).

LAVERY, J. In this appeal, we review for the first time in Connecticut how a creditor may enforce a judgment against a partner in a limited partnership. That issue includes a consideration of whether the remedy of strict foreclosure of a partnership interest is available to a judgment creditor of a partner.

In this case, the defendant Madison Hills, Inc., was a general partner in the plaintiff, Madison Hills Limited Partnership II. The two other defendants, Robert M. Green and M. Richard Kaufmann, Jr., were the majority shareholders in Madison Hills, Inc.[1] The plaintiff obtained a judgment against the defendant on April 9, 1991, after it defaulted on several promissory notes held by the partnership. The defendant paid only $9828.74 of the $169,195.08 judgment.

In an effort to satisfy the remainder of the judgment, the plaintiff moved for a charging order to be entered against the defendant corporation's partnership interest in the plaintiff, pursuant to General Statutes §§ 34-30[2] and 34-66.[3] The plaintiff also moved for immediate strict foreclosure of the partnership interest.[4] The

---

[1] Because the sole interest sought to be foreclosed belongs to Madison Hills, Inc., we will refer to that corporation as the defendant.

[2] General Statutes § 34-30 provides: "On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. Nothing in this chapter shall be held to deprive a partner of the benefit of any exemption laws applicable to his partnership interest."

[3] General Statutes § 34-66 (1) provides in pertinent part: "On due application to a competent court by any judgment creditor of a partner, the court . . . may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which circumstances of the case may require."

[4] General Statutes § 34-66 (2) provides in pertinent part: "The interest charged may be redeemed at any time before foreclosure, or in case of a

trial court held a hearing at which the plaintiff established the amount of the unsatisfied judgment and the percentage of the defendant's partnership interest in the plaintiff. The plaintiff also presented testimony from Donald Blauvelt, a real estate appraiser, regarding the value of the partnership's sole asset, 822 acres of undeveloped land in Madison. This expert testimony was offered to assist the court in determining the value of the defendant's partnership interest.

At the conclusion of the hearing, the trial court granted the plaintiff's motion and charged the defendant's partnership interest with the judgment of $186,841.54.[5] The court denied the plaintiff's motion for immediate strict foreclosure, but ordered that the partnership interest be foreclosed unless redeemed by the defendant prior to April 15, 1993.[6] The defendant has appealed the court's ruling.

I

As a threshold matter, we address whether the trial court properly applied the remedy provisions of General Statutes § 34-66, part of Connecticut's Uniform Partnership Act (UPA),[7] to a limited partnership. The defendant did not raise this issue before the trial court or on appeal.[8] This court will not consider issues not raised before the trial court and not properly preserved for appeal; consideration of this issue is appropriate, however, under the plain error doctrine. Practice Book

sale being directed by the court may be purchased without thereby causing a dissolution . . . ."

[5] This figure reflects the original judgment less the amount paid plus interest.

[6] The trial court referred to both §§ 34-30 and 34-66 but did not specify under which statute the order was granted. Our decision in this case, however, makes this of no matter.

[7] General Statutes § 34-39 et seq.

[8] After argument, this court requested, sua sponte, supplemental briefs on this issue.

§ 4185. Plain error review is warranted in this case because (1) the proper application of the remedy provisions of the UPA to a limited partnership is a question of law, (2) neither party is prejudiced because the interpretation of the statutes does not require further fact finding by the trial court, and (3) both parties have had an opportunity to present written arguments regarding the statutes in their supplemental briefs, ordered and submitted after oral argument. See *Genovese* v. *Gallo Wine Merchants, Inc.,* 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993).

## A

### CHARGING ORDERS UNDER THE UPA AND THE ULPA

Connecticut has adopted both the UPA and the Uniform Limited Partnership Act (ULPA), General Statutes §§ 34-9 through 34-38q. Limited partnerships are governed by the ULPA, and by the UPA to the extent that its provisions are not inconsistent with those of the ULPA. General Statutes § 34-44 (2). In this case, the plaintiff is a limited partnership in which the defendant is a general partner. Thus, this case is controlled by the ULPA and by those provisions of the UPA that do not conflict with the ULPA.

The UPA permits a judgment creditor of a partner to place a type of lien known as a charging order on the partner's interest in the partnership. General Statutes § 34-66; 1 A. Bromberg & L. Ribstein, Partnership (1994) § 3.05, p. 3:71. "[A] charging order . . . is neither fish nor fowl. It is neither an assignment nor an attachment." *Bank of Bethesda* v. *Koch,* 44 Md. App. 350, 354, 408 A.2d 767 (1979). Under this procedure, a court may grant a judgment creditor's application and issue an order charging the debtor partner's interest in the partnership with payment of the judgment debt. General Statutes § 34-66. The charging order leaves the partnership intact but diverts to the judgment cred-

itor the debtor partner's share of the profits. General Statutes § 34-66; A. Weinberger, "Making Partners Pay Child Support: The Charging Order at 100," 27 Hous. L. Rev. 297, 302 (1990). The charging order replaced levies of execution as the remedy for reaching the interest of a partner. See generally J. Gose, "The Charging Order under the Uniform Partnership Act," 28 Wash. L. Rev. 1, 7 (1953).

Once a judgment creditor obtains a charging order, the trial court is authorized to make any orders and inquiries in support of the charging order. General Statutes § 34-66; see, e.g., *Bohonus* v. *Amerco,* 124 Ariz. 88, 89, 602 P.2d 469 (1979); *Hellman* v. *Anderson,* 233 Cal. App. 3d 840, 849, 284 Cal. Rptr. 830 (1991); *Arkansas City* v. *Anderson,* 242 Kan. 875, 890, 752 P.2d 673 (1988); *Gates Rubber Co.* v. *Williford,* 530 S.W.2d 11, 15 (Mo. App. 1975); *Federal Deposit Ins. Corp.* v. *Birchwood Builders,* 240 N.J. Super. 260, 267, 573 A.2d 182, cert. denied, 122 N.J. 317, 585 A.2d 337 (1990). The charging order affects only the partner's interest in the partnership, which is personal property. General Statutes § 34-64. The partner's interest in the partnership is one of three property rights the partner possesses; the others are the partner's rights in specific partnership property and the right to participate in partnership management. General Statutes § 34-62. It is important to note that a charging creditor does not become a full partner, is not entitled to manage the partnership, and has no right to attach specific partnership property. *Rector* v. *Azzato,* 74 Md. App. 684, 690, 539 A.2d 1162 (1988); *Beckley* v. *Speaks,* 39 Misc. 2d 241, 245, 240 N.Y.S.2d 553 (1963), aff'd, 21 App. Div. 2d 759, 251 N.Y.S.2d 1015, appeal dismissed, 15 N.Y.2d 546, 202 N.E.2d 906, 254 N.Y.S.2d 362 (1964); *Federal Deposit Ins. Corp.* v. *Birchwood Builders,* supra, 266–67; E. Axelrod, "The Charging Order—Rights of a Partner's Creditor," 36 Ark. L. Rev. 81, 90 (1982). Because the

partner's rights in specific property of the partnership cannot be attached or made subject to execution; General Statutes § 34-63 (c); and the partner's management rights cannot be assigned to or conferred on anyone other than a partner; General Statutes §§ 34-65 and 34-56 (e); the charging order is the sole remedy available to a judgment creditor of a partner.[9] *In re Matter of Smith,* 17 Bankr. 541, 547 (M.D. Ga. 1982); see also A. Weinberger, supra, 27 Hous. L. Rev. 306; E. Axelrod, supra, 36 Ark. L. Rev. 92.

The ULPA provides protection similar to the UPA. Judgment creditors of a partner in a limited partnership can obtain a charging order against the partnership interest. General Statutes § 34-30; see, e.g., *Crocker National Bank* v. *Perroton,* 208 Cal. App. 3d 1, 6, 255 Cal. Rptr. 794 (1989); *Rector* v. *Azzato,* supra, 74 Md. App. 690; *Chrysler Credit Corp.* v. *Peterson,* 342 N.W.2d 170, 173 (Minn. App. 1984); *Central Petroleum Corp.* v. *Korman,* 15 Misc. 2d 245, 247, 177 N.Y.S.2d 761 (1958), appeal dismissed, 8 App. Div. 2d 782, 190 N.Y.S.2d 314 (1959); *Major Real Estate & Investment Corp.* v. *Republic Financial Corp.,* 695 P.2d 893, 894 (Okla. App. 1985). Section 34-30 of the ULPA does not, however, provide a means to enforce the charging order. Therefore, we must consider what remedies *are* available to a charging creditor under the ULPA.

## B

### CONSISTENCY OF THE UPA AND THE ULPA

As noted, both the UPA and the ULPA apply to limited partnerships to the extent that they do not con-

---

[9] Although the UPA does not explicitly establish the exclusivity of the charging order, the UPA's intended replacement, the Uniform Partnership Act (1992), does. Section 504 (e) of the Uniform Partnership Act (1992), approved by the National Conference of Commissioners on Uniform State Laws in 1992, states: "This section provides the exclusive remedy by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership."

flict. General Statutes § 34-44. Thus, if § 34-66 of the UPA is not inconsistent with § 34-30 of the ULPA, the UPA remedies in § 34-66 apply.

The language in the two sections is not identical.[10] That alone, however, does not determine whether they conflict. Under the ULPA, the rights of a charging creditor are limited to the rights of an assignee of the partnership interest. General Statutes § 34-30. An assignee of a partnership interest is entitled to distributions to which the assignor partner is entitled. General Statutes § 34-30. If all the partners consent, an assignee of a partnership interest has the right to become a limited partner. General Statutes § 34-27a.

Under the UPA, however, a charging creditor is entitled to more than just the rights of an assignee. The UPA provides that the charging creditor is entitled to the distributions to which the partner is entitled *plus* the benefit of all other orders, directions, accounts and inquiries that the partner could make. General Statutes § 34-66. Assignees under the UPA are denied the latter benefit. General Statutes § 34-65.

This disparity in the rights of charging creditors under the UPA and the ULPA suggests that the two sections are not consistent. That suggestion is dispelled, however, by the official comment that accompanied this adoption of the present version of the ULPA.[11] When the present ULPA was adopted, the drafters deleted provisions that granted charging creditors the same

[10] See footnotes 2 and 3.

[11] The official comment to § 703 of the Uniform Limited Partnership Act (1976) states: "Section 703 is derived from Section 22 of the 1916 Act but has not carried over some provisions that were thought to be superfluous. For example, references in Section 22 (1) to specific remedies have been omitted, as has a prohibition in Section 22 (2) against discharge of the lien with partnership property. Ordinary rules governing the remedies available to a creditor and the fiduciary obligations of general partners will determine those matters."

powers and remedies as the UPA. Compare 6 U.L.A. § 22 (1914) with 6 U.L.A. § 703 (1976). The official comment explains that the remedy provisions were superfluous. This explanation suggests that the UPA and the ULPA were not intended to differ.

The consistency of the two sections is also revealed by the fact that § 34-30 of the ULPA has no remedy provisions. Although § 34-30 provides that the charging creditor has the rights of an assignee; General Statutes § 34-30; and assignees have a right to the partner's distributions; General Statutes § 34-27; neither § 34-30 nor § 34-27 provides a method for the assignee to enforce that right. A charging order alone provides little comfort to the charging creditor. A. Bromberg & L. Ribstein, supra, § 3.05, p. 3:71; A. Weinberger, supra, 27 Hous. L. Rev. 314–15. Only General Statutes § 34-66 of the UPA contains a means of enforcing a charging order. Thus, § 34-30 relies on rather than conflicts with § 34-66. See also *Major Real Estate & Investment Corp.* v. *Republic Financial Corp.*, supra, 695 P.2d 894–95 (noting that charging order provision of ULPA supplements charging order provisions of UPA).

Finally, the other jurisdictions that have interpreted this language have found the two sections to be consistent and have applied the remedies of the UPA to entities governed by the ULPA. See *Crocker National Bank* v. *Perroton,* supra, 208 Cal. App. 3d 9; *Major Real Estate & Investment Corp.* v. *Republic Financial Corp.*, supra, 695 P.2d 894. We are likewise persuaded that § 34-30 is not inconsistent with § 34-66. Therefore, the remedy provisions of the UPA are available to judgment creditors under the ULPA.

## C

REMEDIES: THE AVAILABILITY OF STRICT FORECLOSURE

As noted above, the remedy provisions of the UPA allow the court to issue any order and make any inquiry

necessary to enforce a charging order. General Statutes § 34-66. Foreclosure is one of the orders available to charging creditors. General Statutes § 34-66.[12] A vast majority of courts and commentators agrees that the UPA authorizes foreclosure.[13] See, e.g., *Hellman* v. *Anderson,* supra, 233 Cal. App. 3d 349; *Myrick* v. *Second National Bank of Clearwater,* 335 So. 2d 343, 345 (Fla. Dist. Ct. App. 1976); *Arkansas City* v. *Anderson,* supra, 242 Kan. 890; *Tupper* v. *Kroc,* 88 Nev. 146, 153, 494 P.2d 1275 (1972); A. Weinberger, supra, 27 Hous. L. Rev. 315; A. Bromberg & L. Ribstein, supra, § 3.05, pp. 3:72–73; but see *Buckman* v. *Goldblatt,* 39 Ohio App. 2d 1, 4 and n.7, 314 N.E.2d 188 (1974) (noting in dicta that foreclosure would conflict with that court's prior interpretation of UPA § 25 [2] [c]). In all of the reported cases, the partnership interest was foreclosed by sale.

Similarly, charging creditors under the ULPA have been permitted to foreclose on the partnership interest by sale. *Crocker National Bank* v. *Perroton,* supra, 208 Cal. App. 3d 6; *Major Real Estate & Investment Corp.* v. *Republic Financial Corp.,* supra, 695 P.2d 894; but see *In re Stocks,* 110 Bankr. 65, 67 (N.D. Fla. 1989) (noting that ULPA provision does not provide for foreclosure). Charging creditors under the UPA and ULPA logically are treated similarly because the purpose of the charging order provisions under both statutes is to balance the need to protect the orderly operation of the partnership and the rights of creditors. See A. Weinberger, supra, 27 Hous. L. Rev. 301–302.

---

[12] See footnote 4 for text of statute.

[13] The Uniform Partnership Act (1992) explicitly authorizes foreclosure. Section 504 (b) of the Uniform Partnership Act (1992) provides: "A charging order constitutes a lien on the judgment debtor's transferable interest in the partnership. The court may order a foreclosure of the interest subject to the charging order at any time and upon conditions it considers appropriate. The purchaser at the foreclosure sale has the rights of a transferee."

A more difficult question is presented in this case, in which the trial court ordered strict foreclosure. Our research has revealed no reported cases in which a charging order was enforced by strict foreclosure. We must determine whether strict foreclosure is available under the UPA and, thereby, the ULPA.

We begin this consideration by reviewing the definition of the term foreclosure. " 'Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.' " *Southington* v. *State Board of Labor Relations,* 210 Conn. 549, 561, 556 A.2d 166 (1989). Foreclosure is not defined in the UPA. Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property. See *Barclays Bank of New York* v. *Ivler,* 20 Conn. App. 163, 166, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989); Black's Law Dictionary (6th Ed. 1990); J. Durham, "In Defense of Strict Foreclosures: A Legal and Economic Analysis of Mortgage Foreclosure," 36 S.C.L. Rev. 461, 473 and n.76 (1985). The equity of redemption can be cut off either by sale or by strict foreclosure. *Barclays Bank of New York* v. *Ivler,* supra, 166; Black's Law Dictionary (6th Ed. 1990); J. Durham, supra, 36 S.C.L. Rev. 473 and n.76. Thus, the common understanding of the term foreclosure includes both strict foreclosure and foreclosure by sale.

This conclusion is also supported by the manner in which the term foreclosure is used in other of our statutes. In the mortgage context, foreclosure refers to both strict foreclosure and foreclosure by sale. See General Statutes §§ 49-1, 49-14, 49-24. Because the term is used in § 34-66 as in those statutes, it should be interpreted similarly.

Our interpretation of foreclosure is further supported by its historic meaning. At common law, the term fore-

closure meant strict foreclosure. See *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa,* 220 Conn. 643, 647, 600 A.2d 1 (1991); D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05A, p. 158. General Statutes § 49-24 appends to that definition the remedy of foreclosure by sale without altering the existing common law definition. The legislature used the term foreclosure in the UPA without further definition. The legislature is presumed to have acted with knowledge of existing law and with an intent to create one consistent body of law. *Zachs* v. *Groppo,* 207 Conn. 683, 696, 542 A.2d 1145 (1988). Therefore, the legislature is presumed to have known of the existing definition of foreclosure and intended to invoke that definition in the context of the UPA.

Textual analysis also supports the conclusion that strict foreclosure is available under the UPA. Section 34-66 distinguishes between foreclosure and a court-ordered sale.[14] If the word foreclosure meant foreclosure solely by sale, the word would be superfluous in that sentence. In statutory interpretation, no word is to be treated as superfluous. *Groton* v. *Yankee Gas Services Co.,* 224 Conn. 675, 689, 620 A.2d 771 (1993). Thus, in the context of the UPA, we conclude that the meaning of foreclosure must include strict foreclosure.

The availability of alternative methods of foreclosure affords some protection to the debtor defendant. This can be important; under strict foreclosure, the property is appraised at the fair market value. General Statutes § 49-14 (a); *New England Savings Bank* v. *Lopez,* 227 Conn. 270, 278, 630 A.2d 1010 (1993). Fair market value is not, however, necessarily consistent with value obtained by foreclosure by sale. Id., 280. In the paradigm of the foreclosure sale "there is no asking price, no offer and counteroffer, and no opportunity

---

[14] See footnote 4 for the text of the statute.

for the parties to incur the respective market risks." Id., 280–81. In short, foreclosure by sale is designed to "make a deal" without regard to the fair market value. Id., 280. The difference between the fair market value and the best deal available can be great. Both parties are entitled to move for an order of foreclosure by sale or strict foreclosure.

Finally, we are persuaded by an analogy to the Uniform Commercial Code (UCC), General Statutes §§ 42a-1-101 through 42a-10-109. Section 42a-9-501 (1) authorizes a secured party to reduce its claim to judgment, on the debtor's default, and "foreclose or otherwise enforce the security interest *by any available judicial procedure*." (Emphasis added.) The official comment accompanying the section explains that a secured party can foreclose by any procedure available under state law. "[A] judicial sale following judgment, execution and levy is one of the methods of foreclosure contemplated by [this section] . . . ." General Statutes § 42a-9-501, comment 6. Thus, both foreclosure by sale and strict foreclosure are available to secured parties under the UCC. We are persuaded that similar remedies should be available to charging creditors under the UPA.

We conclude, therefore, that the UPA does permit a charging creditor to enforce its charging order through strict foreclosure. In sum, we conclude that the charging order provisions of the UPA and the ULPA do not conflict, that the remedy provisions of the UPA apply to limited partnerships, that a charging creditor can foreclose on a partner's interest in the partnership and that strict foreclosure is available. Therefore, the trial court properly applied § 34-66 of the UPA to this case.

## II

The defendant claims that (1) the trial court erroneously permitted testimony on the value of the part-

nership assets, and (2) the evidence adduced was insufficient to support the judgment. We are unpersuaded by either claim.

The defendant asserts that the trial court improperly admitted testimony from Blauvelt, the plaintiff's expert appraiser, regarding the value of the partnership's undeveloped land. The defendant claims that the witness lacked a sufficient and complete factual basis for his opinion because his appraisal was incomplete when he testified. Blauvelt admitted that a market feasibility study of the potential for development of the land was still in progress. He testified that his appraisal was based on five sales of comparable property, and that he had taken into consideration the possible results of the study.

" 'The trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed.' " *Churchill* v. *Skjerding,* 31 Conn. App. 247, 249–50, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993). "In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion. . . . Some facts must be shown as the foundation for an expert's opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *John,* 210 Conn. 652, 677, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). "Once the trial court has determined that the witness has reasonable qualifications to testify as an expert on the question presented, the objection goes to the weight rather than the admissibility of the testimony. . . . It is rare for this court to find that a trial court has erred in a ruling permitting expert testimony." (Citation omitted.) Id., 677.

Our review of Blauvelt's testimony reveals that he had sufficient basis for his opinion. Further, although the feasibility study was not yet complete, Blauvelt had considered its possible results in his appraisal. Thus, the expert had sufficient facts on which to base his opinion. Therefore, the trial court did not abuse its discretion when it admitted his testimony.

Finally, the defendant claims that the evidence before the court was insufficient to support the judgment. Specifically, the defendant asserts that, because the expert's testimony lacked sufficient factual basis for his appraisal, the judgment could not be based on that testimony. As we noted above, the expert did possess a sufficient factual basis for his opinion, and it was not an abuse of discretion to admit his testimony. It follows from that conclusion that there was sufficient evidence to support the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.