[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S APPLICATION FOR TURNOVER ORDER
The plaintiff has obtained a judgment against, inter alia, the defendants Edward Botwick and David Kurzawa. The plaintiff now seeks a turnover order based on the charging order granted by this court on November 19, 1996. That order, which was sought CT Page 8804 pursuant to General Statutes § 34-171, ordered Botwick and Kurzawa, LLC, to pay to the plaintiff "any and all distributions, credits, drawings or payments due to defendant Botwick and defendant Kurzawa . . . ." Botwick and Kurzawa, LLC has made no payments pursuant to the charging order, and the plaintiff has filed the present application for a turnover order.
The evidence shows that since the date of the charging order, the defendants Kurzawa and Botwick, who are both attorneys at law, have received payments totalling approximately $28,000.00 each from their law firm, Botwick and Kurzawa, LLC. They have testified that none of this money constitutes a distribution of any of their "Limited Liability Company interest," but rather that all of these payments represent compensation for their services to the firm as lawyers. The books of Botwick and Kurzawa, however, simply list these payments in columns under the respective initials of Botwick (EJB) and Kurzawa (DJK). They are not shown in the "salary" column where other wages are indicated. The 1996 tax returns of the individual defendants showed that they received little or no wages, but that they did report significant earnings from self employment on Schedule SE of their respective Form 1040's. The defendants have also introduced into evidence their "operating agreement," which includes provisions to the effect that no distributions are possible except on the determination of the Managers, who happen to be the defendants Botwick and Kurzawa. Botwick and Kurzawa have testified that no such distributions were ordered.
Although it is true that the court's original charging order adopted the plaintiff's suggested language including "distributions, credits, drawings, or payments due . . .", it is also apparent that General Statutes § 34-171 limits a judgment creditor's rights only to the "member's Limited Liability Company interest." General Statutes § 34-101 (10) defines the latter phrase as "a member's share of the profits and losses of the Limited Liability Company and a member's right to receive distributions of the Limited Liability Company's assets, unless otherwise provided in the operating agreement." The question raised by the present motion for a turnover order, therefore, is whether the $28,000 payments at issue here should be treated as "distributions" within the meaning of § 34-171.
The Limited Liability Company Act (LLCA) "extends to professionals practicing as partnerships the same protection now offered those who practice in the form of professional CT Page 8805 corporations." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1993 Sess., p. 1538. The purpose of the act is to shield members of the limited liability company from liabilities of the entity. Conn. Joint Standing Committee Hearings, supra, pp. 1478-79. The Act, however, was not designed to shield members from personal liability. Conn. Joint Standing Committee Hearings, supra, pp. 1480, 1538-39.
The rights of a judgment creditor are set forth in General Statutes § 34-171, which provides, in pertinent part, that "[o]n application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the member's limited liability company interest with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the member's limited liability company interest." General Statutes § 34-171. "Limited liability company membership interest" is defined as "a member's share of the profits and losses of the limited liability company and a member's right to receive distributions of the limited liability company's assets, unless otherwise provided in the operating agreement." General Statutes § 34-101 (10).
Connecticut courts have not yet interpreted General Statutes § 34-171. The Appellate Court, however, has interpreted an identical provision of the Uniform Limited Partnership Act (ULPA), General Statutes §§ 34-9 through 34-38. Section 34-30
addresses the rights of a judgment creditor and permits the creditor to charge the partnership interest of the partner. General Statutes § 34-30. Like § 34-171 of the LLCA, § 34-30 of the ULPA provides in relevant part that "[t]o the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest." General Statutes §34-30.
In Madison Hills Limited Partnership II v. Madison Hills,35 Conn. App. 81, 644 A.2d 363, cert. denied, 231 Conn. 913,648 A.2d 153 (1994), the Appellate Court examined charging orders[1] in the context of both the ULPA and the Uniform Partnership Act (UPA). The case involved a limited partnership in which the defendant was a general partner. Thus, the case was "controlled by the ULPA and by those provisions of the UPA that do not conflict with the ULPA." Id., 84.
The Appellate Court explained that under the UPA, "[t]he CT Page 8806 charging order leaves the partnership intact but diverts to the judgment creditor the debtor partner's share of the profits . . . . The charging order replaced levies of execution as the remedy for reaching the interest of a partner." (Citations omitted.) Id., 84-85. "Once a judgment creditor obtains a charging order, the trial court is authorized to make any orders and inquiries in support of the charging order . . . . The charging order affects only the partner's interest in the partnership, which is personal property . . . . It is important to note that a charging creditor does not become a full partner, is not entitled to manage the partnership, and has no right to attach specific partnership property." (Citations omitted.) Id., 85.
The Appellate Court next addressed the distinctions between the UPA and the ULPA. "Under the ULPA, the rights of a charging creditor are limited to the rights of an assignee of the partnership interest . . . . An assignee of a partnership interest is entitled to distributions to which the assignor partner is entitled." (Citations omitted.) Madison Hills LimitedPartnership II v. Madison Hills, supra, 35 Conn. App. 87. "Under the UPA, however, a charging creditor is entitled to more than just the rights of an assignee. The UPA provides that the charging creditor is entitled to distributions to which the partner is entitled plus the benefit of all other orders, directions, accounts and inquiries that the partner could make[2] . . . . This disparity in the rights of charging creditors under the UPA and the ULPA suggests that the two sections are not consistent." Id.
The court concluded, however, that the provisions were consistent[3] and that "the remedy provisions of the UPA are available to judgment creditors under the ULPA." Id., 88. The court also concluded that both the UPA and the ULPA permit a charging creditor to foreclose on a partner's interest in the partnership and thus a charging order can be enforced through strict foreclosure. Id., 92.
The Connecticut Supreme Court adheres to the principles of statutory construction, where "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . . In seeking to discern that intent, we look to circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship toexisting legislation and common law principals governing the sameCT Page 8807general subject matter." (Emphasis added; internal quotations omitted.) State v. Wilson, 242 Conn. 605, 611, A.2d (1997). When construing statutes, the courts will "avoid constructions that lead to absurd, unworkable or bizarre results." (Internal quotation marks omitted.) Konover v. WestHartford, 242 Conn. 727, 743, (1997).
Although, as mentioned, Connecticut courts have not yet interpreted § 34-171 of the LLCA, the court in Madison HillsLimited Partnership II v. Madison Hills, supra, has interpreted an identical provision of the ULPA, and with the previously discussed principles of statutory construction in mind, it follows that § 34-171 of the LLCA may be consistently interpreted in accordance with analogous provisions of the UPA and the ULPA governing charging orders. Therefore, the remedies available to judgment creditors under both the UPA and the ULPA would be available to judgment creditors under the LLCA. The Appellate Court held that such remedies include "distributions to which the partner is entitled plus the benefit of all other orders, directions, accounts and inquiries that the partner could make." 35 Conn. App. 87.
The LLCA does not define the term "distribution." "Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries."Id., 90. The UPA defines distribution as "a transfer of money or other property from a partnership to a partner in the partner's capacity as a partner or to the partner's transferee." General Statutes § 34-301 (3).
In the present case, Botwick Kurzawa, LLC, has "distributed" approximately $28,000 dollars to each of the defendants, Botwick and Kurzawa since the date of the original charging order. The defendants maintain that no distributions have been made to them in their capacity as members of the LLC, but that the above mentioned payment was in fact a "legal staff expense." The itemization of these payments in columns simply headed with the initials of Botwick and Kurzawa, however, coupled with the absence of wages as reflected on their federal income tax returns, suggest that this is not the case.
Because the term "distribution" is defined broadly and because judgment creditors of a limited liability company should be entitled to the same remedies and rights as judgment creditors of a limited partnership, the payment of money from Botwick 
CT Page 8808 Kurzawa, LLC to the defendants must be characterized as a distribution subject to the charging order. Moreover, the evidence suggests that the money was given to the defendants in their capacity as members of the limited liability company and that it should be viewed as a "distribution" rather than employee wages since it was not listed as the latter on their federal income tax returns. That Botwick and Kurzawa testified that, as Managers, they never authorized the payment of any distributions to themselves should not be viewed as controlling on this issue, in light of other evidence tending to show that "distribution" is the most plausible characterization of these payments.
A contrary construction would defeat the legislature's intent to shield members of a limited liability company only from the liability of the entity, and not from personal liability. A contrary construction would further frustrate the purpose of the statutory provisions designed to protect judgment creditors by allowing a party to defeat a charging order simply by characterizing a payment as something other than a "distribution," even when the available evidence suggests that a distribution is exactly what it was.
For the foregoing reasons, the plaintiff's motion for a turnover order is granted.
SILBERT, J.