**Geraldine DEUTSCH, et al., Plaintiffs/Respondents,**

v.

**Eugene WOLFF, et al., Defendants/Appellants.**

No. ED 74743.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 5, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 9, 1999.

Application for Transfer Denied Jan. 25, 2000.

Mark G. Arnold, Husch & Eppenberger, LLC, St. Louis, for appellant.

Gerald P. Greiman, Daniel V. Conlisk, Dankenbring, Greiman, Osterholt & Hoffmann, P.C., St. Louis, for respondent.

JAMES R. DOWD, Presiding Judge.

Eugene Wolff appeals the trial court's entry of a charging order appointing a receiver for his interest in the D & W Scheutz Road Limited Partnership. The charging order authorizes the receiver to aid the Deutsches in executing upon a judgment previously entered on June 30, 1997 against Mr. Wolff. We affirm the judgment.

### Factual Background

Eugene Wolff was Marvin Deutsch's accountant and close friend from 1948 until Mr. Deutsch's death in 1972. During this time, the friends entered several business ventures together including the D & W Scheutz Road Limited Partnership ("D & W"). Formed in 1973, D & W is a business that owns, develops, and leases real property in St. Louis County. The partnership agreement divides ownership equally between two partners; Mr. Wolff as sole general partner, and "the Living

Trust," of which Geraldine Deutsch is a beneficiary, as limited partner. Mr. Wolff and Mrs. Deutsch are co-trustees of the Living Trust although Mrs. Deutsch delegated her responsibilities as co-trustee to Mr. Wolff.

As sole general partner and active limited partner, Mr. Wolff effectively held complete management authority and control of D & W. Mr. Wolff also served as trustee for two trusts created before Mr. Deutsch's death; the Living Trust, and the Family Trust created for the Deutsch's children and surviving spouse. Alan Wolff, Mr. Wolff's son, also party to this lawsuit, is an accountant and designated as successor trustee for both trusts.

It was alleged, and the trial court found, that the primary assets of the Family Trusts were four real estate projects Mr. Deutsch developed prior to his death. Mr. Wolff personally owned five percent of one project and seven percent of another. In the prior litigation, which established the judgment sought to be enforced herein, the Missouri Supreme Court affirmed the trial court on all counts. *Deutsch v. Wolff*, 994 S.W.2d 561 (1999). Among other things, the Court rejected Mr. Wolff's claims that he owned a percentage in the other two projects.

Following Mr. Deutsch's death, Mr. Wolff, as Trustee of the Family Trust, assumed management of these projects and D & W. In the underlying case, the trial court found that in this capacity, Mr. Wolff engaged in numerous self-dealing transactions divesting the trusts of income and assets. In particular, between 1972 and 1993 Mr. Wolff overpaid himself approximately $1.5 million in trustee's fees. He improperly claimed an ownership interest in three properties owned by the Family Trust and collected $933,396 from their sale. He collected a 10% sales commission on a sale of tax losses from Trust properties. Additionally, the trial court found Mr. Wolff made a self-interested loan for $183,224.50 from the Family Trust and improperly charged $95,580 to the trusts

for miscellaneous services. The Deutsches, as beneficiaries, filed suit against Mr. Wolff for breach of fiduciary duty.

The trial court in the initial suit found for plaintiffs on all counts, removed Wolff as trustee, and awarded the Deutsches approximately $3 million in damages for the overcharges, monies wrongfully taken from the trusts, and accountant's malpractice. The court also entered a charging order appointing a receiver to administer Mr. Wolff's interest in D & W, authorize sale thereof, and assume any management duties with respect to the partnership. Because Mr. Wolff appealed the underlying judgment, execution of the charging order was suspended.

■ In the instant case, Wolff appeals the trial court's entry of the charging order against his interest in D & W arguing that the scope of the order exceeds the court's statutory authority. This court will affirm the trial court's entry of the charging order unless there is no substantial evidence to support it, if it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

*Analysis*

I.  Sale of the Partnership Interest

■ Mr. Wolff alleges that the trial court erred in ordering sale of his interest in the D & W Partnership because a partner's "underlying interest" cannot be sold. Mr. Wolff interprets the statutory definition of partnership interest as preventing the trial court from ordering sale of his interest in D & W. The Uniform Partnership Act, adopted in Missouri in 1949, defines a partnership interest as a partner's share of the firm's profits and surpluses. Section 358.260 RSMo 1994. Mr. Wolff reads the statute as providing two distinct partnership interests: a right to share profits and surpluses, and an underlying economic interest that cannot be conveyed. Such a distinction does not exist in Missouri partnership law.

A partnership interest is an economic right to share in the profits and surpluses, most accurately characterized as intangible personal property. Additional non-economic interests in the partnership include the partners' rights to acquire property, including management powers and co-tenancy in specific partnership property. Section 358.240 RSMo 1994. Partners also hold certain information rights such as the right to inspect partnership books and demand an accounting. Section 358.190, .200, .220 RSMo 1994. The underlying interest which Mr. Wolff perceives likely refers to the culmination of these non-economic rights associated with partnership. A partner may not assign these rights absent approval of the remaining partners. Section 358.270.1 RSMo 1994.

▮ In contrast, the partner's economic interest in profits and surpluses may be conveyed or assigned without the approval of the remaining partners. *Id.* If assigned, the assignee will not become a partner without consent of the other partners as he or she only succeeds to the assignor's right to profits and surpluses. J. Crane & A. Bromberg, *Partnership* § 42, at 239 (1968). For example, in *Tupper v. Kroc,* the trial court appointed a receiver to sell and manage the general partner's interest in a limited partnership to remedy the general partner's breach of fiduciary duty to the partnership. *Tupper v. Kroc,* 88 Nev. 146, 494 P.2d 1275 (1972). In *Tupper,* the general partner argued that he retained an equity interest in the partnerships' assets, unreachable by the trial court. The court held that after the sale, the general partner had no rights to the profits, surplus, or any equity in the partnership property although the sale of his interest did not divest the general partner of his other partnership rights. *Tupper,* 494 P.2d at 1280.

▮ In the present case, section 358.280.2 specifically authorizes a court to sell a partnership interest to satisfy a partner's individual debt without causing dissolution. Mr. Wolff confuses the trans-

ferability of a partner's interest with the significant restrictions on disposition of partnership property. Where the court directs sale, the interest charged may be purchased by any one or more of the partners without thereby causing a dissolution. Section 358.280.2(2) RSMo 1994; *Gates Rubber Co. v. Williford,* 530 S.W.2d 11, 15 (Mo.App.1975). In contrast, creditors may not attach or otherwise encumber partnership property to satisfy a partner's individual debt. Section 358.250 RSMo 1994; *Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A.,* 803 S.W.2d 23, 31 (Mo. banc 1991). This follows from a partner's inability to assign his rights in specific partnership property. J. Crane & A. Bromberg, *Partnership* § 43, at 245. Therefore, partnership property is only reachable by partnership creditors. A partner's individual interest is not partnership property and therefore may be sold to satisfy that partner's individual debts.

Accordingly, we affirm the trial court's order to authorize sale of Mr. Wolff's interest in D & W pursuant to section 385.280.2 RSMo 1994.

## II. Management Authority of a Receiver

▮ A receiver is commonly defined as "a person appointed by a court for the purpose of preserving property of a debtor pending an action against him, or applying the property in satisfaction of a creditor's claim, whenever there is a danger that, in the absence of such an appointment, the property will be lost, removed, or injured." *Black's Law Dictionary,* ·6th ed. (1990). Mr. Wolff interprets section 358.270.1, relating to assignment of partnership interests, as prohibiting transfer of management rights to a receiver. However, a charging order is not an assignment or attachment of a partnership interest. *See Tupper,* 494 P.2d at 1280; *Nigri v. Lotz,* 216 Ga.App. 204, 453 S.E.2d 780, 782 (1995); *Rector v. Azzato,* 74 Md.App. 684, 539 A.2d 1162, 1165 (1988); *Madison Hills Ltd. Partnership II v. Madison Hills, Inc.,* 35 Conn.App. 81, 644 A.2d 363, 367 (1994).

Because Section 358.270.1 applies exclusively to the assignment of a partner's interest, that statute does not apply. Entry of a charging order permits a creditor to execute on a judgment against an individual partner by supplementary proceedings or orders against that partner's interest in the partnership. 59A Am Jur 2D *Partnership* § 790.

Even if we accept Mr. Wolff's contention that a charging order assigns a partnership interest, a complete reading of section 358.270.1 reveals that assignees may in fact acquire management rights with consent of the non-assigning partners. It provides in pertinent part: "a conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners *in the absence of agreement*, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs." Section 358.270.1 RSMo 1994 (emphasis added).

█ The charging order statute authorizes a court to appoint a receiver of the debtor-partner's share of profits and surpluses due the debtor-partner. Section 385.280 RSMo 1994. The court may appoint a receiver if it appears that, through fraud, mismanagement, misconduct, or otherwise, there is a likelihood that property will be wasted, misappropriated or unlawfully diverted without the court's intervention. *Lynch v. Lynch*, 277 S.W.2d 692, 694 (Mo.App.1955). In the present case, the trial court found that Mr. Wolff, as trustee and general partner in D & W, misappropriated partnership assets and breached his fiduciary duty to abstain from self-dealing. To prevent future similar occurrences, the trial court entered the charging order pursuant to Section 358.280 RSMo 1994.

█ Mr. Wolff further argues that vesting the receiver with management powers is beyond the scope of section 358.280.2. However, a receiver is not an assignee but an agent of the court having only such powers, rights, duties, and functions as are conferred upon him or her by statutes, orders, or decrees of the appointing court. 66 Am Jur 2D *Receivers* § 184. In the present case, section 358.280 grants the court discretion to empower the receiver to "make all other orders, directions, accounts and inquiries which the debtor partner might have made, *or which the circumstances of the case may require.*" (emphasis added). Other jurisdictions have applied this language to enable courts to issue such orders necessary to enforce a charging order, including management of the partnership. *See e.g., Tupper v. Kroc*, 494 P.2d at 1280 (granting receiver temporary management authority over limited partnership); *Arkansas City v. Anderson*, 242 Kan. 875, 752 P.2d 673 (1988).

█ In general, a receiver receives rents and other income and pays current obligations, but does not manage the property in the sense of carrying on the trade or business. *Naslund v. Moon Motor Car Co.*, 345 Mo. 465, 134 S.W.2d 102, 107 (1939). However, when managers of a partnership have willfully engaged in a series of illegal activities resulting in a breach of their fiduciary obligations to the limited partners causing dissipation of partnership resources, a court may remove the general partner and appoint a receiver to assume control of partnership affairs. *See generally Tupper*, 88 Nev. 146, 494 P.2d 1275; *Procedures and Remedies in Limited Partners' Suits for Breach of the General Partner's Fiduciary Duty*, 90 HARV. L. REV. 763, 785 (1977). The charging order at issue in the present case equips the receiver with broad powers to allow Respondents to collect on the judgment to the fullest extent of the law. The order does not force the receiver to sell, manage or otherwise dispose of the property. It merely confers upon him discretion to provide necessary relief.

The charging order appointing a receiver was entered for the purpose of satisfy-

ing a judgment obtained by Mr. Wolff's partners. Consequently, the order by itself will not prevent Mr. Wolff's partners from initiating dissolution proceedings at their convenience. However, the order does not cause dissolution of the partnership. Consequently, in the absence of dissolution proceedings and upon termination of the receivership, Mr. Wolff's management rights will reinstate. Section 358.280 RSMo 1994; *Tupper v. Kroc,* 494 P.2d at 1280. In the meantime, the statute permits the court to vest receivers with temporary management authority. Pending further order of the trial court, the charging order allows the receiver the ability to manage the partnership free from interference by Mr. Wolff.

The judgment of the trial court entering the charging order appointing the receiver is affirmed.

LAWRENCE G. CRAHAN and LAWRENCE E. MOONEY, concur.